OPINION
{¶ 1} Defendant-appellant Harry Harris appeals his July 17, 2003 conviction and sentence entered by the Stark County Court of Common Pleas on the charges of felonious assault with a firearm specification and having a weapon under disability. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND THE CASE {¶ 2} On the night of July 23, 2003, John McLeod was visiting a residence located in Canton, Ohio when a dispute arose over money. During the argument, McLeod gave Antoine Harris, appellant's brother, a black eye. McLeod recounted the events of the evening at trial:
 {¶ 3} "Q. Is this a situation where Antoine received an injury from you during this altercation?
 {¶ 4} "A. (Witness nodding head up and down.)
 {¶ 5} "Q. And as far as you knew the altercation was over between you and Antoine?
 {¶ 6} "A. Yeah.
 {¶ 7} "Q. What happened at that point?
 {¶ 8} "A. Well, we had, you know, reentered the living room from the bathroom and his brother, you know, Harry, he seen his eye and he was like, oh, you know, Antoine, you know, what happened to your eye, you know, or whatever. You know, well, you know, John hit me in my eye. He said, don't worry about it, I'll take care of it.
 {¶ 9} "Q. Who said that, don't worry about it, I'll — take care of it?
 {¶ 10} "A. Harry.
 {¶ 11} "Q. Okay. And then what happens?
 {¶ 12} "A. Well, you know, he started walking towards the bedroom.
* * *
 {¶ 13} "A. * * * And I started following him towards the bedroom, you know, I'm walking at a rapid speed. You know, he moving fast, I'm moving fast, you know what I'm saying, I knew he was going to get a pistol, I just felt it —
* * *
 {¶ 14} "Q. Do you see him with anything once he gets to the bedroom?
 {¶ 15} "A. Yeah, when he get to the bedroom I see, you know, him grab an object.
 {¶ 16} "Q. Okay. Does he turn around and face you?
 {¶ 17} "A. Yeah, he turned around — turn around with it.
 {¶ 18} "Q. Does he have anything with him?
 {¶ 19} "A. Yeah, he had a pistol on him.
 {¶ 20} "Q. And what do you — what do you do when you see the pistol?
 {¶ 21} "A. Well, by him being taller and bigger, the only thing I can do is try to snatch it really, you know.
 {¶ 22} "Q. Tried to grab the gun?
 {¶ 23} "A. Yeah.
 {¶ 24} "Q. Did you say anything to him? If you recall.
 {¶ 25} "A. I don't know. I don't know. I was heated. I don't know.
 {¶ 26} "Q. What happens then when you reach for this pistol?
 {¶ 27} "A. He shoot it. He just fired.
 {¶ 28} Tr. at 229-231.
 {¶ 29} While being treated at the hospital for his gunshot wounds, McLeod told Canton City Police Officer Jeff Weller he did not know the person who shot him. Later, McLeod told Detective Daniel Heaton it was appellant who shot him. Detective Heaton composed a photo array with appellant's photo included. McLeod identified appellant as the shooter. McLeod told the police he lied about who shot him because he wanted to handle the shooting himself on the streets.
 {¶ 30} Appellant was charged with two counts of felonious assault, each with a firearm specification, and two counts of having weapons under disability. The first set of charges stemmed from appellant's shooting at McLeod, and the second set of charges stemmed from appellant's shooting at Canton Police Sgt. Kenneth Brown. Appellant plead guilty to the charges relating to the shooting of Officer Brown, and waived his right to a jury trial with respect to the remaining weapons under disability charge. Appellant did not waive his right to a jury trial on the remaining felonious assault charge. The case proceeded to trial, and the jury found appellant guilty of felonious assault and guilty of the firearm specification.
 {¶ 31} On July 17, 2003, the trial court accepted the jury's verdict and appellant's plea, convicting him of the charges. The court imposed prison terms of four years for each felonious assault conviction and the mandatory three years for the attendant firearm specification. On the charges of having weapons under disability, the court sentenced appellant to a ten month prison term on each count. The court ordered the sentences served concurrently, but ordered the two firearm specification sentences run consecutively. The aggregate prison term imposed was ten years.
 {¶ 32} It is from the July 17, 2003 conviction and sentence appellant now appeals raising the following assignments of error:
 {¶ 33} "I. The trial court erred by limiting the appellant's voir dire to one half an hour.
 {¶ 34} "II. The trial court erred by prohibiting the appellant from arguing in closing that the appellant did not commit this crime.
 {¶ 35} "III. The trial court's finding of guilty was against the manifest weight of the evidence and was not supported by sufficient evidence."
 I {¶ 36} In the first assignment of error, appellant argues the trial court erred in limiting voir dire to thirty minutes per side. At trial, an exchange took place regarding the length and scope of appellant's voir dire:
 {¶ 37} "MR. YARWOOD: I actually have about four or five more questions I would like to ask on that.
 {¶ 38} "THE COURT: You're getting very close to your time on the 30 minutes, so I think you better use it.
 {¶ 39} "MR. YARWOOD: I didn't realize we only had —
 {¶ 40} "THE COURT: Oh, yeah.
 {¶ 41} "MR. YARWOOD: And —
 {¶ 42} "THE COURT: Everybody knows in this court you have 30 minutes on the opening, on the closing you have 30 minutes. And you've tried cases with me before.
 {¶ 43} "MR. YARWOOD: I will agree I tried a case two years ago. I am completely unaware of the half hour. I would ask for additional time on that. I'm certainly not trying to beat a dead horse. This Court is aware of me, I don't believe you would believe I would ever mislead the Court and my lack of knowledge as to the time limitation. You are accurate, about two years ago. I've probably tried in excess of 15 cases since then in numerous counties. I have a hard time — I've never had a time limitation placed on me other than Alliance Municipal Court. I would ask for some leeway because I don't believe we discussed that prior to the trial here today, so I think I'm at a little disadvantage.
* * *
 {¶ 44} "MR. YARWOOD: I have three more areas regarding beyond a reasonable doubt that I would like to discuss. The credibility of the witness, I've already covered that portion to this aspect. I do have a question about prejudice by some motive. And what I mean by that is, as you know we can impeach a witness to show they may have a prejudice or bias or motive. I want to make sure that they understand.
 {¶ 45} "THE COURT: You've already asked that question.
 {¶ 46} "MR. YARWOOD: I believe actually I asked regarding —
 {¶ 47} "THE COURT: You've already asked that question.
 {¶ 48} "MR. YARWOOD: And the other is circumstantial versus direct evidence. This one I've already inquired on. I do also — I don't know that the Court has addressed, I apologize, regarding how they're to deliberate, meaning that they're to work towards an agreement, but they're not obligated to do that.
 {¶ 49} "THE COURT: That's in my final instructions to the jury.
 {¶ 50} "MR. YARWOOD: I understand that, Your Honor. I think I'm still allowed to inquire whether they're a follower, a leader, whether or not the type of individual —
 {¶ 51} "THE COURT: Keep your voice down a little bit.
 {¶ 52} "MR. YARWOOD: I apologize.
 {¶ 53} "THE COURT: You're going to have five minutes and you can discuss direct and circumstantial.
 {¶ 54} "MR. YARWOOD: I'm sorry?
 {¶ 55} "THE COURT: You can follow up on questions which you've asked about if anyone would just want to get out of here, and I think you've already touched upon it.
 {¶ 56} "MR. YARWOOD: I do apologize, so I'm clear, I'm allowed to talk about circumstantial versus direct, but you are limiting me on discussing their ability to perceive the witnesses to determine whether they're testifying with prejudice, biased or motives?
 {¶ 57} "THE COURT: That's correct.
 {¶ 58} "MR. YARWOOD: You've also completely — any additional inquiry regarding proof beyond a reasonable doubt?
 {¶ 59} "THE COURT: I'm cutting you off.
 {¶ 60} "MR. YARWOOD: I understand.
 {¶ 61} "THE COURT: On the race, sympathy, I've already asked that question and there was no affirmative response. I don't feel it needs to be gone into any further.
 {¶ 62} "MR. YARWOOD: I apologize for that term, you're not allowing me to inquire as the defense lawyer, is that fair to say?
 {¶ 63} "THE COURT: That's right, because I've already covered that. I'll note your objections for the record."
 {¶ 64} Tr. at 136-140.
 {¶ 65} R.C. 2945.03 states:
 {¶ 66} "The judge of the trial court shall control all proceedings during a criminal trial, and shall limit the introduction of evidence and the argument of counsel to relevant and material matters with a view to expeditious and effective ascertainment of the truth regarding the matters in issue."
 {¶ 67} The trial court has broad discretion to control the proceedings in a criminal trial, including setting the parameters for voir dire. The court's restrictions cannot be unreasonable or arbitrary. Upon review, we find the trial court's restriction limiting voir dire to thirty minutes per side was not unreasonable or arbitrary, and the trial court did not abuse its discretion in setting reasonable parameters regarding voir dire.
 {¶ 68} The first assignment of error is overruled.
 II {¶ 69} In his second assignment of error, appellant maintains the trial court erred in prohibiting appellant from arguing during closing argument appellant did not commit the crime.
 {¶ 70} The following exchange occurred at trial:
 {¶ 71} "MR. WISE: Yes, just briefly. And Mr. Yarwood and I discussed it, I believe he's in agreement, just so it's on the record, I've indicated to him that at some point, whether it was in his voir dire or opening statements, he talks about the Defendant pleading not guilty and by doing so saying he didn't do it. I would object in a closing statement as to the defense attorney saying anything about what the Defendant said. He has said nothing.
* * *
 {¶ 72} "MR. WISE: Well, I think he's going to say that in the context that his assertion is that the testimony supports that. If he's going to say simply that he didn't do it, that's — he's got to make in a way that he's saying, the evidence supports a finding of not guilty.
 {¶ 73} "THE COURT: Now, that's what really getting to is, Mr. Yarwood, if you feel you can stand in front of the Jury and say, Mr. Harris didn't do this then I think we have to discuss that. If you want to be able to say, the State has not proven or the evidence does not support a finding of guilty in this matter because, remember, we're not determining whether he is innocent or not.
 {¶ 74} "MR. YARWOOD: I understand that, Your Honor.
 {¶ 75} "THE COURT: We're determining whether the State of Ohio has proved beyond a reasonable doubt because of the essential elements of the crime.
* * *
 {¶ 76} "THE COURT: That's why I said, both you and the State of Ohio are under the same constraints. Mr. Wise cannot stand there and say, he did it.
 {¶ 77} "MR. YARWOOD: Okay.
 {¶ 78} "THE COURT: He can stand up there and say, the evidence proves the State of Ohio has proven, the State of Ohio has carried its burden and has proven that Harry Harris did, on the blank day of July, 2002, in the County of Stark, State of Ohio, commit felonious assault with a gun specification. But I'm not going to allow him to stand up and say, he did it. I'm not going to allow you to stand up and say, he didn't do it. It has to be couched in terms of the burden, which is upon the State of Ohio, and that goes for both of you. And if you feel that that limits you, I am more than happy for you to say what you want to say as a proffer. I will tell you that you cannot do it, I'll note your objection for the record, and if this case comes out that the jury * * *"
 {¶ 79} Tr. at 297-298, 301-302, 305.
 {¶ 80} Appellant maintains the trial court denied his right to due process and his right to remain silent in prohibiting defense counsel from stating his client did not commit the crime. We disagree.[1]
 {¶ 81} The trial court did not error in limiting appellant's counsel's statements regarding the meaning of appellant's not guilty plea. Counsel's statements were properly limited to the evidence presented at trial. The prosecutor could not tell the jury appellant committed the crime, and defense counsel could not tell the jury appellant did not commit the crime based solely upon his not guilty plea.
 {¶ 82} Appellant's second assignment of error is overruled.
 III {¶ 83} Finally, in his third assignment of error, appellant argues the trial court's finding of guilt was against the manifest weight of the evidence and was not supported by the sufficiency of the evidence.
 {¶ 84} Appellant argues the state presented only one witness to the shooting, John McLeod, a felon, who provided inconsistent statements to the police and inconsistent testimony.
 {¶ 85} In State v. Jenks (1981), 61 Ohio St.3d 259,574 N.E.2d 492, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held:
 {¶ 86} "An appellate courts function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.
 {¶ 87} When applying the aforementioned standard of review to the case sub judice, based upon the facts noted supra, we do not find, as a matter of law, appellant's convictions were based upon insufficient evidence.
 {¶ 88} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52, citing State v. Martin (1983),20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230, syllabus 1, 10 Ohio St.2d 230,227 N.E.2d 212.
 {¶ 89} We find the evidence was sufficient to support appellant's convictions, and the jury's determination as such was not against the manifest weight of the evidence.
Appellant's third assignment of error is overruled.
 {¶ 90} The July 17, 2003 conviction and sentence entered by the Stark County Court of Common Pleas is affirmed.
Gwin, P.J., and Edwards, J. concur.
[1] We note the prosecutor's original request which prompted the exchange was to preclude defense counsel from equating the appellant's not guilty plea to the defendant saying he didn't do it. Such request was proper and we agree the entering of a not guilty plea does not equate to the defendant saying he didn't do it. The not guilty plea is merely a denial of the charge. Being stopped from arguing the defendant said he didn't do it is not the same as being stopped from arguing the defendant did not commit the crime.