DECISION.
{¶ 1} Defendant-appellant, Garry Brewster, was convicted of one count of possessing criminal tools pursuant to R.C.2923.24(A), one count of tampering with evidence pursuant to R.C.2921.12(A)(1), and thirty counts of forgery pursuant to R.C.2913.31(A)(2), under two separate indictments. He appeals those convictions, raising thirteen assignments of error, which we address out of order. We find no merit in these assignments of error.
 I. Speedy Trial {¶ 2} In his sixth assignment of error, Brewster states that the trial court erred in failing to grant his motion to dismiss for lack of a speedy trial. He argues that the state violated his constitutional and statutory rights because four hundred and thirteen days had run from his arrest until the time he was tried. This assignment of error is not well taken.
 {¶ 3} R.C. 2945.71 et seq., Ohio's speedy-trial statutes, are the state's method of implementing the right to a speedy trial in the United States and Ohio Constitutions. State v. Adams
(1989), 43 Ohio St.3d 67, 68, 538 N.E.2d 1025. R.C. 2945.71(C)(2) provides that a person charged with a felony shall be brought to trial within two hundred seventy days after arrest. For computing time, each day during which the accused is held in jail in lieu of bail counts as three days. R.C. 2945.71(E).
 {¶ 4} Despite Brewster's arguments to the contrary, the triple-count provision did not apply in this case. The record contains a holder on Brewster from the state of Colorado. It also shows that he was wanted on open warrants in other jurisdictions. Consequently, the record demonstrates that his detention was not solely due to the pending charges in Hamilton County. See Statev. MacDonald (1976), 48 Ohio St.2d 66, 70-71, 357 N.E.2d 40;State v. Phillips (1990), 69 Ohio App.3d 379, 381,590 N.E.2d 1281.
 {¶ 5} Consequently, the state had two hundred seventy days in which to bring Brewster to trial. Because he showed that he was not tried within two hundred and seventy days of his arrest, Brewster established a prima facie case of a violation of the speedy-trial statutes. State v. Hirsch (1998),129 Ohio App.3d 294, 315, 717 N.E.2d 789; State v. Geraldo (1983),13 Ohio App.3d 27, 28, 468 N.E.2d 328.
 {¶ 6} R.C. 2945.72(H) states that "[t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted upon other than the accused's own motion" can extend the time within which the state must bring the accused to trial. The state bears the burden to show that actions or events chargeable to the defendant have tolled enough time so that the defendant is tried within the speedy-trial period. Hirsch, supra, at 315-316, 717 N.E.2d 789;Geraldo, supra, at 28, 468 N.E.2d 328.
 {¶ 7} We accept, for argument's sake, Brewster's contention that the speedy-trial period for all charges, including those in the second indictment, ran from the time of his arrest because the second indictment was based on the same facts as the first indictment. See State v. Adams (1989), 43 Ohio St.3d 67, 68-70,538 N.E.2d 1025; State v. Cooney (1997), 124 Ohio App.3d 570,572-573, 706 N.E.2d 854. Nevertheless, the record shows that continuances granted due to the voluminous number of motions Brewster filed and reasonable continuances granted by the court sufficiently tolled the time so that he was tried within two hundred and seventy days.
 {¶ 8} The record shows that Brewster repeatedly demanded his right to a speedy trial. Yet he continued to file numerous motions, often repeatedly attempting to relitigate issues the trial court had already decided. His repeated demands for a speedy trial did not mean that the time was not tolled during the period it took to determine his many motions. As this court has recently stated, "Allowing a defendant to file any motions he pleases while not tolling the speedy-trial time would open the door for severe abuse of the system. This would essentially grant criminal defendants the ability to bury the state with paperwork and then claim a `gotcha' when they are not brought to trial on time." State v. Wiest, 1st Dist. No. C-030674, 2004-Ohio-2577.
 {¶ 9} The record amply supports the trial court's finding that Brewster's conduct "contributed to the unnecessary delay of the trial." Consequently, the court did not err in overruling his motion to dismiss for lack of a speedy trial, and we overrule his sixth assignment of error.
 II. Fourth Amendment Issues {¶ 10} In his first three assignments of error, Brewster contends that the trial court erred in overruling his various motions to suppress. He argues that the police used an unwarranted entry into a hotel room occupied by Brewster and his brother and co-defendant, Michael, to gather evidence to support a search warrant. He also argues that the police proceeded to conduct a warrantless search of the hotel room prior to obtaining a search warrant. These assignments of error are not well taken.
 {¶ 11} The record shows that the police received a tip from a confidential informant, whom they knew to be reliable, that Michael and Garry Brewster were staying in a hotel room in Springdale, Ohio, and were making counterfeit checks and identification. The informant also stated that they used fake names and identifications and that they were wanted in other jurisdictions. The police officers confirmed that open warrants existed on both of them.
 {¶ 12} The officers obtained a photograph of Brewster and a description of Michael. They spoke with hotel employees, who stated that Brewster was paying for a room and that he was in the company of another individual who matched Michael's description. The employees also stated that Brewster and Michael were driving a red compact car.
 {¶ 13} Then, the officers watched the room from a hotel across the street. They saw two individuals get out of a red compact car. One of these individuals was carrying a black briefcase that could be used to carry a laptop computer. Also, one of the individuals looked like the photograph of Brewster and the other matched the description of Michael.
 {¶ 14} As the officers approached the hotel room, they walked past an open window and saw an individual they believed to be Brewster lying on the bed, alongside a number of checks. They also saw computer equipment in the room.
 {¶ 15} Detective Jerrod Livermore knocked on the door and Michael answered it. As he opened it, Brewster rose from the bed and went toward the bathroom. After the detective identified himself, Michael voluntarily let him in the room.
 {¶ 16} Livermore and another officer walked approximately three to four feet inside the room and told the occupants why they were there. Brewster said his name was Ronald Brewster, but refused to provide identification or to give any other information. He told the officers, "I don't want you here." He also attempted to go back towards the bathroom, but the officers stopped him. Michael said that his name was Larry Nowlin, but that he did not have any identification, as he had left it in the car. The officers noticed that the checks on the bed had disappeared.
 {¶ 17} At that time, the officers placed Brewster and Michael under arrest. One officer did a quick sweep of the main room and the bathroom to make sure no one else was hiding there. The officer saw pieces of paper floating in the toilet. Livermore removed them and placed them on a counter to dry, without examining them.
 {¶ 18} Then, the officers had a hotel employee secure the door to the room and left an officer to guard it. They obtained a warrant to search the room. During the search, they discovered counterfeit checks and other evidence.
 {¶ 19} The occupants of a hotel room have a reasonable expectation of privacy that the Fourth Amendment protects.Stoner v. California (1964), 376 U.S. 483, 490, 84 S.Ct. 889;State v. Smith (1991), 73 Ohio App.3d 471, 475,597 N.E.2d 1132; State v. Day (1976), 50 Ohio App.2d 315, 319,362 N.E.2d 1253. Warrantless searches and seizures are unreasonable under the Fourth Amendment except for a few well-delineated exceptions.Horton v. California (1990), 496 U.S. 134, 110 S.Ct. 2301;State v. Willoughby (1992), 81 Ohio App.3d 562, 567,611 N.E.2d 937.
 {¶ 20} First, Brewster contends that the police officers who initially approached his hotel room had no arrest or search warrant. This argument ignores the evidence in the record that open warrants existed for both Michael and Garry Brewster. The warrants gave the officers authority to arrest both Michael and Garry Brewster wherever they found them. They did not need to have actual warrants in their possession. See Crim.R. 4(D);State v. Thomas (Nov. 19, 1997), 9th Dist. No. 96CA006504;State v. Bishop (Mar. 20, 1997), 8th Dist. No. 70177. Though the individuals in the hotel room gave false names, the officers had probable cause to believe they were Michael and Gary Brewster. Since arrest warrants existed, the officers had authority to enter the hotel room to arrest the Brewsters. See State v. Pierson (1998), 128 Ohio App.3d 255, 258,714 N.E.2d 461; State v. Campana (1996), 112 Ohio App.3d 297, 302,678 N.E.2d 626. Compare Steagald v. United States (1981),451 U.S. 204, 101 S.Ct. 1642; Payton v. New York (1980),445 U.S. 573, 100 S.Ct. 1371.
 {¶ 21} Even if no warrants had existed, one exception to the warrant requirement is a search or seizure conducted by consent.Schneckloth v. Bustamonte (1973), 412 U.S. 218, 219,93 S.Ct. 2041; State v. Posey (1988), 40 Ohio St.3d 420, 427,534 N.E.2d 61. In this case, the evidence showed that the officers knocked on the door of the hotel room, that they identified themselves and their purpose, and that Michael freely and voluntarily opened the door and let the officers inside. Consequently, the officers' initial entry into the hotel room did not violate the Fourth Amendment. See Posey, supra, at 427, 534 N.E.2d 61; State v.Thompson (1987), 33 Ohio St.3d 1, 7-8, 514 N.E.2d 407; State v.Kruger, 9th Dist. No. 20830, 2002-Ohio-1750.
 {¶ 22} Brewster takes issue with the trial court's finding that Michael voluntarily let the police officers in the room, as well as various other findings of fact. In reviewing a ruling on a motion to suppress, this court accepts the trial court's findings of fact as being true as long as competent, credible evidence supports them. State v. Sheppard (2001),144 Ohio App.3d 135, 140, 759 N.E.2d 823. Brewster's argument is essentially that Michael's testimony was more credible than that of the police officers. But in a hearing on a motion to suppress, matters as to the credibility of evidence are for the trial court to decide. State v. Fanning (1982), 1 Ohio St.3d 19, 20,437 N.E.2d 583; State v. Rossiter (1993), 88 Ohio App.3d 162, 166,623 N.E.2d 645.
 {¶ 23} Next, Brewster contends that, after his arrest, the police conducted a warrantless search of the hotel room. The record shows that the officers, for their own safety, conducted a protective sweep to make sure no one else was in the hotel room and, while conducting that sweep, found pieces of paper in the toilet.
 {¶ 24} The risk of danger in the context of an arrest in the home or otherwise on an "adversary's turf" is greater than in an on-the-street encounter. Therefore, the officers making an arrest may take reasonable steps to ensure their own safety. Marylandv. Buie (1990), 494 U.S. 325, 333-334, 110 S.Ct. 1093. The Fourth Amendment permits a properly limited protective sweep in conjunction with an in-home arrest when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene. Id. at 336-337,110 S.Ct. 1093.
 {¶ 25} In this case, when the officers approached the hotel room, they saw an individual they believed to be Brewster jump off the bed and run to the bathroom. After they had entered the room, Brewster became uncooperative and again attempted to go into the bathroom. Under the circumstances, the officers had a reasonable belief that another individual could have been hiding in the bathroom and could have posed a danger to those on the arrest scene. Therefore, the police were justified in conducting a protective sweep without a warrant. See State v. Sutton, 7th Dist. No. 01-CA-181, 2002-Ohio-6901, at ¶ 19; State v. Walsson
(May 6, 1996), 12th Dist. No. CA95-09-063.
 {¶ 26} Additionally, the protective sweep was properly limited in scope. It consisted of a cursory visual inspection of the bathroom, the place in which a person might have been hiding, and lasted no longer than necessary to dispel the reasonable suspicion of danger. See Buie, supra, at 335-336,110 S.Ct. 1093; State v. Lyons (1992), 83 Ohio App.3d 525, 532-535,615 N.E.2d 310; Walsson, supra. Consequently, we hold that the protective sweep conducted without a warrant did not violate Brewster's Fourth Amendment rights.
 {¶ 27} While conducting the protective sweep, the officers found pieces of what looked like a check floating in the toilet. They removed the pieces and set them on the counter. Brewster contends that this warrantless seizure violated the Fourth Amendment. We disagree. The officers' actions fell under the exigent-circumstances exception to the warrant requirement, which permits officers to act quickly, without a warrant, to prevent the imminent destruction of evidence. See State v. Moore,90 Ohio St.3d 47, 52, 2000-Ohio-10, 734 N.E.2d 804; State v.McGettrick (1988), 40 Ohio App.3d 25, 32-33, 531 N.E.2d 755;State v. Hatcher (Sept. 3, 1999), 1st Dist. No. C-980938.
 {¶ 28} A warrantless search or seizure mandated by exigent circumstances must be "strictly circumscribed by the exigencies which justify its initiation." State v. Applegate,68 Ohio St.3d 348, 350, 1994-Ohio-356, 626 N.E.2d 942; Namay, supra, at 80, 735 N.E.2d 526; Hatcher, supra. Here, the officers removed the pieces of paper from the toilet, without examining them. They did what was necessary to preserve the evidence, and no more. They inspected the pieces of paper only after obtaining a warrant. Therefore, their actions did not violate the Fourth Amendment.
 {¶ 29} Brewster relies on cases from this court where we held that "[a] warrantless entry into a home by law enforcement authorities, even upon probable cause, cannot be justified by exigent circumstances of their own making." See Sheppard,
supra, at 143-144, 759 N.E.2d 823; State v. Jenkins (1995),104 Ohio App.3d 265, 271, 661 N.E.2d 806. Those cases are distinguishable. In this case, the police did not make a warrantless entry into the hotel room. They entered pursuant to outstanding warrants for the arrest of both Garry and Michael Brewster. In properly executing those warrants and conducting a protective sweep, they discovered a torn-up check in the toilet. Consequently, the police did not create the exigency of retrieving that evidence to prevent its destruction. Under Brewster's argument, every time a suspect attempted to destroy evidence in response to a police presence, the exigency would be of the police officers' own making. Our cases do not mandate that result.
 {¶ 30} Finally, Brewster argues that the trial court erred in overruling without a hearing successive motions to suppress he filed after the second indictment was returned. The trial court need not hold a hearing on every motion to suppress. It must conduct a hearing only when factual allegations that would justify relief support the claims in the motion. State v.Hartley (1988), 51 Ohio App.3d 47, 48, 554 N.E.2d 950; Solon v.Mallion (1983), 10 Ohio App.3d 130, 132, 460 N.E.2d 729.
 {¶ 31} In this case, the successive motions raised the same issues that the trial court had already heard and determined. Brewster was simply trying to attack the results of a previous motion to suppress. The court had already determined the facts relating to the arrests and searches and had held that those facts did not justify relief. Consequently, the trial court acted within its discretion when it denied the later motions without a hearing.
 {¶ 32} Under the circumstances, we cannot hold that Brewster's Fourth Amendment rights were violated. Consequently, the trial court did not err in overruling his motions to suppress, and we overrule his first, second and third assignments of error.
 III. Discovery Issues {¶ 33} In his fourth assignment of error, Brewster contends that the trial court erred in failing to impose sanctions for the state's discovery violations. He argues that, a few days before trial was set, the court allowed the state to "supplement" its case with over two hundred pages of discovery, thus delaying the trial and denying him the right to a speedy trial. This assignment of error is not well taken.
 {¶ 34} The record shows that trial was scheduled to begin on April 29, 2002. At a pretrial hearing on April 24, 2002, the prosecutor brought to court numerous documents and other evidence that the police had discovered in the Brewsters' hotel room. Brewster objected, contending that he had made numerous demands for discovery. The prosecutor stated that, the previous December, he had provided a list of the evidence that he had brought to the hearing, but that he had received no demand to view the evidence. He offered and later proceeded to go through the evidence the state intended to present with Brewster and Michael's counsel.
 {¶ 35} Brewster argued that the trial court should have excluded all of this evidence. He objected to a continuance, contending that it violated his right to a speedy trial. Nevertheless, the court granted a continuance until May 7 and ordered that the time be charged to the state.
 {¶ 36} The trial court has broad discretion in regulating discovery and in determining the appropriate sanction for a discovery violation. State v. Wiles (1991), 59 Ohio St.3d 71,78, 571 N.E.2d 97; State v. Reed (June 26, 1996), 1st Dist. No. C-950450. Civ.R. 16(B)(1)(c) states that "[u]pon motion of the defendant the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies thereof, available to or within the custody or control of the state, and which are material to the preparation of his defense, or are intended for use by the prosecuting attorney as evidence at trial, or were obtained from or belong to the defendant." This rule requires the prosecuting attorney to allow the defendant to inspect the evidence. It does not require that the prosecutor physically deliver the evidence to the defense. State v. Moss, 8th Dist. Nos. 81022 and 81725, 2003-Ohio-743, ¶ 18-21; State v. Saphire (Dec. 8, 2000), 2nd Dist. No. 2000 CA 39; State v. Thurman (June 28, 1995), 2nd Dist. No. 14741.
 {¶ 37} In this case, the prosecuting attorney complied with the rule in December by giving the defense a list of the evidence recovered. He actually went beyond the rule's requirements by bringing the documents to the hearing, despite receiving no demand to view them, and going over the evidence the state intended to present piece by piece. Since no discovery violation occurred, the trial court did not abuse its discretion by failing to exclude the evidence.
 {¶ 38} Further, even if a discovery violation had occurred, a continuance is the favored method to avoid prejudice that may flow from a failure to provide discovery yet ensure that the charges against an accused are tried timely and fairly. State v.Parks (1990), 69 Ohio App.3d 150, 155, 590 N.E.2d 300. The record does not support Brewster's argument that the continuance violated his right to a speedy trial. The trial court granted a continuance until May 7, which it charged to the state, and which, therefore, did not prejudice Brewster. Any further delay after that date was due to Brewster's voluminous filing of motions, not to any alleged discovery violation.
 {¶ 39} Under the circumstances, we cannot hold that Brewster was unfairly prejudiced by any alleged discovery violations, or that the trial court's orders regarding discovery were so arbitrary, unreasonable or unconscionable as to connote an abuse of discretion. See Wiles, supra, at 78-80, 571 N.E.2d 97;Adams, supra, at 157, 404 N.E.2d 144; State v. Adkins (1992),80 Ohio App.3d 211, 218-219, 608 N.E.2d 1152; Reed, supra. We, therefore, overrule Brewster's fourth assignment of error.
 {¶ 40} In his fifth assignment of error, Brewster states that the trial court erred in failing to dismiss all charges with prejudice because of the state's discovery violations that allowed the destruction of material, exculpatory evidence. He contends that he repeatedly requested that the state turn over "relevant dispatch logs, tapes and information, as well as property and inventory sheets, logs and information," but that this information was destroyed.
 {¶ 41} The state's failure to preserve materially exculpatory evidence violates a defendant's right to due process. Californiav. Trombetta (1984), 467 U.S. 479, 488-489, 104 S.Ct. 2528;State v. Ritze, 154 Ohio App.3d 133, 2003-Ohio-4580,796 N.E.2d 566, ¶ 16. Evidence is materially exculpatory where the evidence possesses an exculpatory value that is apparent before the evidence is destroyed, and where it is of such a nature that the defendant would be unable to obtain comparable evidence by other reasonable means. Trombetta, supra, at 488-89, 104 S.Ct. 2528;State v. Benson, 152 Ohio App.3d 495, 2003-Ohio-1944,788 N.E.2d 693, ¶ 10.
 {¶ 42} The record shows that Brewster subpoenaed the police records in question from the appropriate police department, which informed him that they had been destroyed. Brewster sought the police records to show that the sequence of events could not have occurred the way the state had alleged and the police officers had testified at the suppression hearing. His theory was that the police could not have had a search warrant at the time they searched the hotel room.
 {¶ 43} This information would have been relevant at the suppression hearing, which occurred many months before Brewster attempted to subpoena the records. It was not relevant to the issue at trial, Brewster's guilt or innocence of the crimes with which he was charged. The only possible use for the records at trial would have been to impeach the credibility of the police officers. But they would have, in all likelihood, been inadmissible for that purpose under Evid.R. 608(B). See State v.Kamel (1984), 12 Ohio St.3d 306, 310-311, 466 N.E.2d 860; Statev. Lundy (1987), 41 Ohio App.3d 163, 168-169, 535 N.E.2d 664. Consequently, that information had no exculpatory value, much less any exculpatory value that was evident at the time it was destroyed.
 {¶ 44} The failure to preserve potentially useful, but not materially exculpatory, evidence violates a defendant's due-process rights only if the police or the prosecution have acted in bad faith. Bad faith implies more than bad judgment or negligence. "It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another."Ritze, supra, at ¶ 17, quoting Benson, supra, at ¶ 14. Given the police records' lack of relevancy, we doubt whether they were even "potentially useful" evidence. Nevertheless, the record fails to show any police conduct that rose to the level of bad faith. Accordingly, we overrule Brewster's fifth assignment of error.
 IV. Confidential Informant {¶ 45} In his seventh assignment of error, Brewster states that the trial court erred in overruling his motions to obtain the identity of the state's confidential informant. He also argues that the trial court erred in allowing hearsay statements by the confidential informant into evidence.
 {¶ 46} The prosecution must disclose an informant's identity to a criminal defendant when the informant's testimony is (1) vital to establishing an element of the crime, or (2) helpful or beneficial to the accused in the preparation of a defense. Statev. Williams (1983), 4 Ohio St.3d 74, 77, 446 N.E.2d 779; Statev. Feltner (1993), 87 Ohio App.3d 279, 281-282, 622 N.E.2d 15. Mere speculation or the possibility that the informant might be of some assistance is not enough to show that the testimony of the informant would be helpful in preparing a defense. State v.Daniels (Mar. 17, 2000), 1st Dist. No. C-990549.
 {¶ 47} Generally, disclosure is not required where the informant was not an active participant in the criminal activity, but was merely a tipster. It is also not required where the informant's involvement was limited to providing information relevant to probable cause. Feltner, supra, at 282,622 N.E.2d 15; State v. Parsons (1989), 64 Ohio App.3d 63, 67-68,580 N.E.2d 800.
 {¶ 48} The defendant bears the burden to show a particularized need for disclosure. An appellate court will not reverse the trial court's resolution of the issue of disclosure absent an abuse of discretion. Feltner, supra, at 282,622 N.E.2d 15; Daniels, supra.
 {¶ 49} Brewster generally asserted below that he needed the identity of the confidential informant and that its withholding violated his right to confront the witnesses against him. He did not show a specific need for the identity of the informant. This was not a case where the informant virtually became a state's witness. See Williams, supra, at 76, 446 N.E.2d 779; Feltner,
supra, at 282, 622 N.E.2d 15. He or she was merely a tipster whose involvement was limited to providing information relevant to probable cause. See State v. Wilson, 156 Ohio App.3d 1,2004-Ohio-144, 804 N.E.2d 61, ¶ 36. Consequently, we cannot hold that the trial court abused its discretion in overruling Brewster's motions for disclosure of the informant's identity.
 {¶ 50} Brewster also argues that the trial court improperly allowed hearsay statements by the confidential informant into evidence. But the record demonstrates that the statements of which he complains were not offered for their truth. Their purpose was merely to show the steps in the police's investigation. Therefore, they were not hearsay within the meaning of Evid.R. 801(C). See State v. Williams (1996),115 Ohio App.3d 24, 44, 684 N.E.2d 358; State v. Price (1992),80 Ohio App.3d 108, 110, 608 N.E.2d 1088; State v. McCurdy, 1st Dist. No. C-020808, 2003-Ohio-5518, ¶ 9. Accordingly, we overrule Brewster's seventh assignment of error.
 V. Jury Instructions {¶ 51} In his eighth assignment of error, Brewster argues that the trial court erred in instructing the jury on complicity. He argues that the evidence was insufficient to support a charge on complicity. This assignment of error is not well taken.
 {¶ 52} An accomplice is an individual who can be indicted and punished for complicity, and accomplices can also be prosecuted and punished as if they were the principal offenders. R.C.2923.03(F); State v. Coleman (1988), 37 Ohio St.3d 286,525 N.E.2d 792, paragraph two of the syllabus; State v. Woods
(1983), 13 Ohio App.3d 49, 50-51, 468 N.E.2d 121. Ohio's complicity statute states that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense." R.C.2923.03(A)(2).
 {¶ 53} To support a conviction for complicity by aiding and abetting, the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. State v. Johnson,93 Ohio St.3d 240, 2001-Ohio-1336, 754 N.E.2d 796, syllabus.
 {¶ 54} Mere presence of an individual at the scene of the crime is not sufficient to prove that he or she was an accomplice. But aiding and abetting may be demonstrated by direct or circumstantial evidence. It can be inferred from "presence, companionship and conduct before and after the offense is committed." Id. at 243-245, 754 N.E.2d 796; State v. Gray (Aug. 27, 1999), 1st Dist. No. C-980946. When the jury can reasonably find from the evidence presented at trial that the defendant acted as an aider and abetter, a jury instruction on complicity is proper. State v. Perryman (1976), 49 Ohio St.2d 14,358 N.E.2d 1040, paragraph five of the syllabus, vacated as to death penalty (1978), 438 U.S. 911, 98 S.Ct. 3136; State v. Haile
(Sept. 27, 1995), 1st Dist. No. C-940690.
 {¶ 55} The record demonstrates that Brewster occupied and paid for a hotel room registered in a false name used by his brother, Michael. Brewster and Michael were present in the hotel room when police officers saw checks on the bed in plain sight. When the police knocked on the door, Brewster ran toward the bathroom, where police later discovered pieces of a check in the toilet. When asked for identification, Brewster gave police a false name. He also attempted to again run to the bathroom, but police stopped him. In the hotel room, police found numerous forged checks in the names of various companies, one of which had once employed Brewster. The police officers also found partially completed and blank checks, partially completed and blank identification cards, copies of signatures from checks, lists of check-cashing locations, and computer equipment and software for printing checks.
 {¶ 56} This evidence showed more than mere presence at the scene. It supported the inference that Brewster, along with his brother, Michael, was an aider and abetter in the forgery operation. Consequently, the state presented sufficient evidence to support an instruction on complicity, and the trial court did not err in giving such an instruction. Brewster's contention that an instruction on complicity somehow lowered the state's burden of proof is erroneous because the complicity statute requires proof that the accused acted with the same culpability required for the commission of the principal offense. See State v.Coleman (1988), 37 Ohio St.3d 286, 289-290, 525 N.E.2d 792;State v. Mabry (1982), 5 Ohio App.3d 13, 14-16, 449 N.E.2d 16. Accordingly, we overrule Brewster's eighth assignment of error.
 {¶ 57} In his ninth assignment of error, Brewster contends that the trial court erred in failing to properly instruct the jury. He contends that the trial court should have given his proposed jury instructions, and that the trial court failed to instruct the jury on the presumption of innocence and the state's burden of proof.
 {¶ 58} A trial court must give the defendant's requested instructions to the jury if they are correct, pertinent statements of law and are appropriate under the facts of the case. But the court need not give the requested instructions verbatim and may use its own language to communicate the same legal principles. State v. Lessin, 67 Ohio St.3d 487, 493,1993-Ohio-52, 620 N.E.2d 72; State v. Scott (1987),41 Ohio App.3d 313, 317, 535 N.E.2d 379; State v. Kennedy (Mar. 16, 2001), 1st Dist. No. C-000255. The record shows that the trial court included Brewster's proposed instructions, to the extent that they were correct, in the substance of its charge to the jury. See State v. Theuring (1988), 46 Ohio App.3d 152, 154,546 N.E.2d 436; Kennedy, supra.
 {¶ 59} Further, the trial court fully and completely gave all jury instructions that were relevant and necessary for the jury to weigh the evidence and to discharge its duty as the trier of fact. See State v. Comen (1990), 50 Ohio St.3d 206,553 N.E.2d 640, paragraph two of the syllabus. We find no error in the court's instructions to the jury, and, therefore, we overrule Brewster's ninth assignment of error.
 VI. Motions for a New Trial {¶ 60} In his tenth assignment of error, Brewster contends that the trial court erred in overruling his motions for a new trial. First, Brewster has failed to separately argue this assignment of error. Therefore, we may disregard it. App.R. 12(A)(2); C. Miller Chevrolet, Inc. v. Willoughby Hills (1974),38 Ohio St.2d 298, 301, 313 N.E.2d 400.
 {¶ 61} Nevertheless, our review of the record does not show that any of the alleged errors or irregularities Brewster raised in his motions for a new trial materially affected his substantial rights or prejudiced him so that he was prevented from having a fair trial. See Crim.R. 33(A) and (E). Consequently, the trial court's decisions overruling his motions were not so unreasonable, arbitrary or unconscionable as to connote an abuse of discretion. See State v. Schiebel (1990),55 Ohio St.3d 71, 564 N.E.2d 54, paragraph one of the syllabus;State v. Jones (Dec. 17, 1999), 1st Dist. No. C-980294. Accordingly, we overrule Brewster's tenth assignment of error.
 VII. Cumulative Error {¶ 62} In his eleventh assignment of error, Brewster states that the trial court erred in failing to protect his rights to due process and a fair trial. He argues that the cumulative effect of the court's errors and the state's actions denied him his rights so that his convictions must be reversed. This assignment of error is not well taken.
 {¶ 63} The cumulative effect of errors may deprive a defendant of a fair trial, even though individual instances of error do not warrant reversal. State v. DeMarco (1987),31 Ohio St.3d 191, 509 N.E.2d 1256, paragraph two of the syllabus;Hirsch, supra, at 310, 717 N.E.2d 789. The defendant must demonstrate that a reasonable probability exists that the outcome of his trial would have been different absent the alleged errors.State v. Johnson (2000), 140 Ohio App.3d 385, 391,747 N.E.2d 863.
 {¶ 64} First, Brewster contends that the trial court improperly allowed into evidence various items, including false identification cards, blank social-security cards, check-cashing lists and other checks that did not specifically relate to the charged offenses. He argues that these items were irrelevant and highly prejudicial.
 {¶ 65} Our review of the record shows that these items were relevant since they tended to show that Brewster and his brother had knowingly engaged in a sophisticated forgery operation. See Evid.R. 401; State v. Moore (1988), 40 Ohio St.3d 63, 65,531 N.E.2d 691. They showed opportunity, intent, preparation, and planning to utter the forged checks, and the evidence was, therefore, admissible under Evid.R. 404(B). Consequently, the trial court did not abuse its discretion in allowing the items to be admitted into evidence. See State v. Shedrick (1991),61 Ohio St.3d 331, 337, 574 N.E.2d 1065; State v. Coleman (1989),45 Ohio St.3d 299-300, 544 N.E.2d 622; Hirsch, supra, at 306-307, 717 N.E.2d 789. Further, we cannot say that any danger of unfair prejudice substantially outweighed the evidence's probative value so that its admission was an abuse of discretion. See Evid.R. 403(A); Hirsch, supra, at 307-308, 717 N.E.2d 789.
 {¶ 66} Next, Brewster argues that he was "not provided with, nor waived" his right to testify at trial. The defendant's right to testify is a fundamental and personal right that only the accused may waive. Nevertheless, the trial court need not inquire about the defendant's decision whether to testify in his own defense, as such an inquiry may be unnecessary or even harmful to the defense. State v. Bey, 85 Ohio St.3d 487, 497,1999-Ohio-283, 709 N.E.2d 484; State v. Adkins (2001),144 Ohio App.3d 633, 644, 761 N.E.2d 94; State v. Seibert, 6th Dist. No. WD-02-107, 2003-Ohio-3107, ¶ 10. In this case, nothing in the record suggests that Brewster misunderstood or was unaware of his right to testify or that he was denied the opportunity to do so. Consequently, the trial court's failure to advise him on the right to testify was not in error.
 {¶ 67} Third, Brewster argues that the trial court erred in failing to grant his motions for a mistrial because the conduct of the court, the prosecutor and various witnesses denied him the right to a fair trial. The decision whether to grant a mistrial lies within the trial court's discretion. An appellate court will not reverse its decision granting or denying a mistrial absent an abuse of discretion. State v. Sage (1987), 31 Ohio St.3d 173,182, 510 N.E.2d 343; State v. McNeel (May 22, 1998), 1st Dist. No. C-960980. A trial court should not order a mistrial merely because an error or irregularity has occurred, unless it affects the defendant's substantial rights. The court should declare a mistrial "only when the ends of justice so require and when a fair trial is no longer possible." State v. Broe, 1st Dist. No. C-020521, 2003-Ohio-3054, ¶ 36; McNeel, supra.
 {¶ 68} We find no error in the record so egregious as to deny Brewster a fair trial. As for the trial court, generally, the proper avenue for redress when a party believes that the trial court is biased is the filing of an affidavit of bias and prejudice with the Supreme Court of Ohio. R.C. 2701.03;Johnson, supra, at 391, 747 N.E.2d 863. In this case, Brewster filed such an affidavit and the supreme court found it to have no merit.
 {¶ 69} While Brewster undoubtedly tried everyone's patience, nothing in the record shows that the trial court violated its duty of impartiality or behaved in a way that deprived Brewster of a fair trial. See Johnson, supra, at 391-392,747 N.E.2d 863; State v. Jones (Dec. 17, 1999), 1st Dist. No. C-980294. Most of the conduct of which Brewster complains occurred outside of the hearing of the jury, and we cannot, therefore, find it to be prejudicial.
 {¶ 70} Further, the trial court has broad discretion to control the proceedings before it. State ex rel. Butler v.Dennis (1981), 66 Ohio St.2d 123, 128, 420 N.E.2d 116; State v.Harris, 5th Dist. No. 2003CA00287, 2004-Ohio-1557, ¶ 64. The record does not show that the trial court's decisions about the conduct of the trial, including limiting closing arguments to twenty-five minutes, were so unreasonable, arbitrary or unconscionable as to connote an abuse of discretion. See Statev. Davis (1991), 62 Ohio St.3d 326, 340, 581 N.E.2d 1362;Adams, supra, at 157, 404 N.E.2d 144; State v. Evans (Aug. 18, 1993), 1st Dist. Nos. C-910443 and C-910515.
 {¶ 71} We also cannot say that any alleged prosecutorial misconduct deprived Brewster of a fair trial. See State v.Keenan (1993), 66 Ohio St.3d 402, 405, 613 N.E.2d 203; Hirsch,
supra, at 309-310, 717 N.E.2d 789. Brewster contends that the prosecutor made numerous improper comments during his closing arguments. Prosecutors are entitled to wide latitude in their remarks, and most of the remarks that Brewster objected to were fair comments on the evidence. State v. Tibbetts,92 Ohio St.3d 146, 168, 2001-Ohio-132, 749 N.E.2d 226; State v. Mason,82 Ohio St.3d 144, 162, 1998-Ohio-370, 694 N.E.2d 932; Hirsch,
supra, at 309, 717 N.E.2d 789. Consequently, the trial court did not abuse its discretion in overruling Brewster's motions for a mistrial. See McNeel, supra.
 {¶ 72} Our review of the record convinces us that, even if the asserted rulings were erroneous, no reasonable probability existed that the outcome of the trial would have been different in the absence of the alleged errors, particularly given the strength of the state's case against Brewster. See Johnson,
supra, at 391, 747 N.E.2d 863; Hirsch, supra, at 310, 717 N.E.2d 789. Accordingly, we overrule Brewster's eleventh assignment of error.
 VIII. Weight and Sufficiency {¶ 73} In his twelfth assignment of error, Brewster argues that the trial court erred in overruling his Crim.R. 29 motions for judgments of acquittal, which is the same as a claim that the evidence was insufficient to support the convictions. Ritze,
supra, at ¶ 12; State v. Cedeno (Oct. 23, 1998), 1st Dist. No. C-970465. He also contends that his convictions were against the manifest weight of the evidence. This assignment of error is not well taken.
 {¶ 74} Brewster was convicted of thirty counts of forgery pursuant to R.C. 2913.31(A)(2). The statute provides that "[n]o person, with a purpose to defraud, or knowing that the person is facilitating a fraud shall * * * [f]orge any writing so that it purports to be genuine when it actually is spurious, or to be the act of another who did not authorize that act, or to have been executed at a time or place or with terms different from what in fact was the case, or to be a copy of any original when no such original existed."
 {¶ 75} As is evident from our discussion of the previous assignments of error, the record shows that the state's evidence, when viewed in a light most favorable to the prosecution, could have convinced a reasonable trier of fact that Brewster, in complicity with Michael, had committed thirty separate acts of forgery pursuant to R.C. 2913.31(A)(2). Therefore, the evidence was sufficient to support those convictions. See State v. Jenks
(1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus; State v. Simones (1971), 27 Ohio App.2d 9, 15-16,272 N.E.2d 146.
 {¶ 76} Brewster was also convicted of one count of possessing criminal tools pursuant to R.C. 2923.24(A). That statute provides that "[n]o person shall possess or have under the person's control any substance, device, instrument, or article with purpose to use it criminally." The state's evidence, when viewed in a light most favorable to the prosecution, could have convinced a reasonable trier of fact that Brewster had possessed computer equipment and software for use in forging checks. Therefore, the evidence was sufficient to support that conviction. See Jenks, supra, at paragraph two of the syllabus;State v. Tolbert (1996), 116 Ohio App.3d 86, 91-92,686 N.E.2d 1375.
 {¶ 77} Finally, Brewster was convicted of one count of tampering with evidence, pursuant to R.C. 2921.12(A)(1). That statute provides that "[n]o person, knowing that an official proceeding or investigation is in process, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation." The state's evidence, when viewed in a light most favorable to the prosecution, could have convinced a reasonable trier of fact that Brewster, upon seeing the police officers at the hotel room door, had thrown pieces of a counterfeit check in the toilet in an attempt to destroy it. Consequently, the evidence was sufficient to support that conviction. See Jenks,
supra, at paragraph two of the syllabus; State v. Urbin,148 Ohio App.3d 293, 2002-Ohio-3410, 772 N.E.2d 1239, ¶ 17-38.
 {¶ 78} Since sufficient evidence supported all of Brewster's convictions, the trial court did not err in overruling his motions for judgments of acquittal. Nevertheless, when the evidence is sufficient to support a conviction, an appellate court may still reverse the conviction as being against the manifest weight of the evidence. State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. After reviewing the record, we cannot hold that the jury lost its way and created such a manifest miscarriage of justice that we must reverse Brewster's convictions and order a new trial. Therefore his convictions were not against the manifest weight of the evidence, and we overrule his twelfth assignment of error. Id.; State v.Allen (1990), 69 Ohio App.3d 366, 374, 590 N.E.2d 1272.
 IX. Sentencing {¶ 79} In his thirteenth assignment of error, Brewster contends that the trial court improperly sentenced him to serve a total of sixteen years in prison. First, he argues that all of the offenses of which he was convicted were allied offenses of similar import pursuant to R.C. 2941.25.
 {¶ 80} The elements of forgery pursuant to R.C.2913.31(A)(2), possessing criminal tools pursuant to R.C.2923.24(A), and tampering with evidence pursuant to R.C.2921.12(A)(1), when compared in the abstract, do not correspond to the degree that the commission of one will result in the commission of the others. Therefore, they are not allied offenses of similar import. State v. Rance, 85 Ohio St.3d 632,1999-Ohio-291, 710 N.E.2d 699, paragraph one of the syllabus;State v. Bounds (1995), 107 Ohio App.3d 700, 705,669 N.E.2d 334; State v. Campbell, 1st Dist. No. C-020822, 2003-Ohio-7149, ¶ 13-14. Consequently, any inquiry about those offenses is at an end, and Brewster was properly sentenced for all three offenses. See Rance, supra, at 636, 1999-Ohio-291, 710 N.E.2d 699; Statev. Murray, 156 Ohio App.3d 219, 2004-Ohio-654, 805 N.E.2d 156, ¶ 19.
 {¶ 81} Further, multiple violations of the same statute are not allied offenses of similar import, and a defendant may be sentenced for each violation. State v. Larsen (1993),89 Ohio App.3d 371, 375-376, 624 N.E.2d 766; State v. Wilson, 5th Dist. No. 02CA030, 2004-Ohio-1692, ¶ 33. Consequently, the thirty counts of forgery were not allied offenses of similar import, and Brewster could properly have been sentenced on all thirty.
 {¶ 82} Brewster also contends that his total sentence was disproportionate to the offenses and constituted cruel and unusual punishment. As a general rule, a sentence that falls within the terms of a valid statute cannot amount to cruel and unusual punishment. McDougle v. Maxwell (1964),1 Ohio St.2d 68, 69, 203 N.E.2d 334; State v. Thomas, 1st Dist. No. C-010724, 2002-Ohio-7333, ¶ 32.
 {¶ 83} In this case, Brewster was convicted of thirty-one fifth-degree felonies and one third-degree felony. The sentences the trial court imposed were within the statutory limits for those offenses, and, in fact, Brewster could have received a maximum of thirty-six years in prison. See R.C. 2929.14(A)(3) and (5). The trial court made the proper findings to justify the sentences imposed and properly stated its reasons for those findings. The sentences were supported by clear and convincing evidence and were not contrary to law. See State v. Comer,99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473, ¶ 10-27; Statev. Edmonson, 86 Ohio St.3d 324, 325-329, 1999-Ohio-110,715 N.E.2d 131; State v. Haynes, 1st Dist. No. C-020685, 2004-Ohio-762, ¶ 18-21; State v. Campbell, 1st Dist. No. C-020822, 2003-Ohio-7149, ¶ 22-28.
 {¶ 84} Further, we cannot hold that the sentences were so disproportionate to the offenses as to shock the community's sense of justice. See State v. Weitbrecht, 86 Ohio St.3d 368,370-371, 1999-Ohio-113, 715 N.E.2d 167; Thomas, supra, at ¶ 32-33. In this case, Brewster and his brother conducted an extensive check-forging operation, and Brewster had a lengthy criminal record for similar offenses. He was sentenced to less than half of the maximum time in prison that he could have received. Accordingly, we overrule the thirteenth assignment of error.
 X. Summary {¶ 85} In sum, we overrule all of Brewster's thirteen assignments of error. We affirm his convictions and sentences.
Judgment affirmed.
SUNDERMANN, P.J., and HILDEBRANDT, J., concur.