The STATE of Ohio, Appellee,

v.

SHEPPARD, Appellant.

[Cite as *State v. Sheppard* (2001), 144 Ohio App.3d 135.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–990894 and C–990895.

Decided June 1, 2001.

138

*Michael K. Allen,* Hamilton County Prosecuting Attorney, and *Phillip R. Cummings,* Assistant Prosecuting Attorney, for appellee.

*Hastings & Hastings* and *Robert R. Hastings, Jr.,* for appellant.

GORMAN, Presiding Judge.

Defendant-appellant, Kenneth Sheppard, appeals his convictions for assaulting a police officer in violation of R.C. 2903.13(A) and for possession of cocaine in violation of R.C. 2925.11(A). In his two assignments of error, he contends that the trial court erred in overruling his separate motions to suppress his identification, evidence obtained as the result of an illegal entry into his residence, and in-custody statements, and that his convictions were contrary to law and against the manifest weight of the evidence. Because the trial court erred in overruling his

motions to suppress evidence and his in-custody statements, we reverse his convictions and remand the case for further proceedings.

Cincinnati police officer Timothy Bley was on bicycle patrol near Republic Street when he saw two men conducting what he believed to be a drug transaction. After approaching and questioning the two men, Bley noticed that one of them had a plastic bag in his hand. He asked about the bag's contents. The man opened it, and Bley saw what appeared to be crack cocaine. When Bley told the man that he was under arrest, the man pulled Bley off the bicycle and ran way.

Bley chased the man to a park off Republic Street. When Bley caught him, the two began to wrestle on the ground. The man punched Bley in the mouth and attempted to grab his gun. As they continued to struggle near a fence, some individuals on the other side pulled the man under the fence and away from Bley. Bley watched him flee into an apartment building on Republic Street.

The following day, Bley and several other police officers returned to the area, looking for the man who had assaulted Bley. As Bley and another officer questioned people in the neighborhood, an unidentified individual told them that they could find the man they were looking for in a third-floor apartment in a building on Republic Street.

The officers went to the apartment without a warrant, knocked on the door, and announced that they were police officers. They heard sounds of scuffling inside, but no one answered the door. Bley and another officer climbed onto the building's fire escape and peered through a window of the apartment. Bley recognized the individual he saw in the apartment, later identified as Sheppard, as the man who had assaulted him the day before.

When Sheppard saw the officers on the fire escape, he ran into a back bedroom and closed the door. Bley and the other officer opened the window and climbed into the apartment. They opened the front door for their fellow officers. Then, they approached the back bedroom with their weapons drawn and arrested Sheppard.

After the police officers advised Sheppard of his *Miranda* rights, a police investigator questioned him at the scene. Sheppard was cooperative and stated that he was the person who had been involved in the chase by police the day before. He stated that he did not intend to hurt Officer Bley and that he had run because he was afraid. He apologized to the investigator for hurting Bley. The investigator told him that he should apologize directly to Bley. Subsequently, when Sheppard was being escorted out of the building, he saw Bley and told him that he was sorry and that he had not intended to hurt him.

In his first assignment of error, Sheppard contends that the trial court erred in overruling his motions to suppress evidence, identification, and statements obtained as the result of his warrantless arrest. He argues that the police intrusion into his private residence without a warrant violated his Fourth Amendment rights.

In reviewing the trial court's decision on a motion to suppress, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Curry* (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172, 1174; *State v. Neu* (Mar. 3, 2000), Hamilton App. No. C–990552, unreported, 2000 WL 238098. But our review of the trial court's findings and conclusions regarding the warrantless arrest of Sheppard involves an additional step. After reviewing the trial court's findings of historical fact for clear error, *Ornelas v. United States* (1996), 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911, 920–921; *State v. Duncan* (1998), 130 Ohio App.3d 77, 83, 719 N.E.2d 608, 612–613, and accepting those properly supported facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether, from the standpoint of an objectively reasonable police officer, the facts gave rise to probable cause and exigent circumstances. *Id.* at 696, 116 S.Ct. at 1661–1662, 134 L.Ed.2d at 918–919; *State v. Deters* (1998), 128 Ohio App.3d 329, 333–334, 714 N.E.2d 972, 975.

The "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed * * *." *United States v. United States Dist. Court* (1972), 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752, 764. Searches and seizures inside a home without a warrant are presumptively unreasonable. *Payton v. New York* (1980), 445 U.S. 573, 586–587, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639, 650–651; *State v. Jenkins* (1995), 104 Ohio App.3d 265, 268, 661 N.E.2d 806, 808. Consequently, the Fourth Amendment prohibits police from making a warrantless and nonconsensual entry into a suspect's home to make a routine felony arrest. *Payton, supra,* at 576, 100 S.Ct. at 1374–1375, 63 L.Ed.2d at 644–645; *State v. Bowe* (1988), 52 Ohio App.3d 112, 113, 557 N.E.2d 139, 141.

But one exception to the warrant requirement permits warrantless felony arrests inside the home if both probable cause and exigent circumstances exist. *Welsh v. Wisconsin* (1984), 466 U.S. 740, 750, 104 S.Ct. 2091, 2097, 80 L.Ed.2d 732, 743–744; *Payton, supra,* at 583–590, 100 S.Ct. at 1378–1382, 63 L.Ed.2d at 648–652; *Jenkins, supra,* at 268, 661 N.E.2d at 808. "[A]n exigent circumstance is an emergency that prompts police to believe there is reasonable cause to enter a home without a warrant when a person in the home is in need of immediate aid or to prevent a situation threatening life or limb, or the immediate

loss, removal, or destruction of evidence or contraband." *State v. Sladeck* (1998), 132 Ohio App.3d 86, 90, 724 N.E.2d 488, 491 (Gorman, J., dissenting), citing *Mincey v. Arizona* (1978), 437 U.S. 385, 392–393, 98 S.Ct. 2408, 2413–2414, 57 L.Ed.2d 290, 299–301. The scope of this exception must be strictly circumscribed by the exigencies that justify the entry, and "the police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests." *Welsh, supra,* at 749–750, 104 S.Ct. at 2097, 80 L.Ed.2d at 742; *Blanchester v. Hester* (1992), 81 Ohio App.3d 815, 818, 612 N.E.2d 412, 414.

■ The officers in this case maintained that their warrantless intrusion into the apartment was justified because it was not Sheppard's apartment. But it is undisputed that he was an invited guest of the tenant, that he stayed there on a regular basis, and that his belongings were there. Accordingly, he had a legitimate expectation of privacy in the apartment, and he was entitled to claim the protection of the Fourth Amendment. See *Minnesota v. Olson* (1990), 495 U.S. 91, 95–99, 110 S.Ct. 1684, 1687–1690, 109 L.Ed.2d 85, 92–95.

■ Upon being directed to the apartment in which Sheppard was present and receiving no answer upon knocking, the police officers went onto the fire escape. They testified, without contradiction, that the landlord of the apartment building had given them express permission to patrol the common areas of the building in an effort to stop the neighborhood drug activity. Because the officers had a right to be on the fire escape when they looked into the apartment and saw Sheppard in plain view, no Fourth Amendment concerns were implicated at that time. *Horton v. California* (1990), 496 U.S. 128, 133, 110 S.Ct. 2301, 2306, 110 L.Ed.2d 112, 121, fn. 5; *Texas v. Brown* (1983), 460 U.S. 730, 739–740, 103 S.Ct. 1535, 1542, 75 L.Ed.2d 502.

■ Further, when Bley recognized Sheppard, from his observations on the previous day, as the individual who had possessed cocaine and who had assaulted him, he had facts and circumstances within his knowledge sufficient to warrant a prudent individual in believing that Sheppard had committed a criminal offense. Consequently, he had probable cause to arrest Sheppard. See *Beck v. Ohio* (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142, 145; *State v. Heston* (1972), 29 Ohio St.2d 152, 155–156, 58 O.O.2d 349, 350–352, 280 N.E.2d 376, 377; *Deters, supra,* at 333, 714 N.E.2d at 974.

The state contends that because Sheppard ran into the back bedroom of the apartment as soon as he saw the police officers on the fire escape, the officers reasonably feared that he could have been destroying evidence, retrieving a weapon, or finding a means of escape. Therefore, the state reasons, there were exigent circumstances to justify the officers' entry into the residence without a warrant. But this court specifically held in *Jenkins, supra,* that "[a] warrantless

entry of a home by law enforcement authorities, even upon probable cause, cannot be justified by exigent circumstances of their own making." *Jenkins, supra,* at 271, 661 N.E.2d at 810. Accord *State v. Davis* (1999), 133 Ohio App.3d 114, 119–120, 726 N.E.2d 1092, 1096; *State v. Sims* (1998), 127 Ohio App.3d 603, 612, 713 N.E.2d 513, 519; *N. Royalton v. Bramante* (Apr. 29, 1999), Cuyahoga App. No. 74019, unreported, 1999 WL 258188.

In *Jenkins,* a police officer received from two informants information that led him to believe that the defendant was preparing marijuana for sale in his apartment. He knocked on the door, and after the defendant lifted a shade and looked through a window in the door, he identified himself as a police officer. The defendant refused to admit him. Before the shade fell back into place, the officer saw the defendant running. He believed that the defendant was going to destroy drugs. Consequently, he kicked in the door and pursued the defendant to a bathroom, where he caught him flushing marijuana down a toilet.

We stated that because it was not until after the officer had knocked and was refused entry that he suspected that the defendant was running to destroy evidence of drugs, the exigent circumstances were the direct result of the officer's own actions. Consequently, the officer's entry into the defendant's apartment violated the defendant's Fourth Amendment rights, and the trial court erred in overruling his motion to suppress. We also noted that the officer, upon arriving at the defendant's apartment house and meeting with an informant, could have secured the location while he took the informant to a magistrate to obtain a warrant. *Id.* at 271–272, 661 N.E.2d at 810.

Similarly, in the present case, the exigent circumstances were the direct result of the police officers' actions. Despite their belief that Sheppard was inside, the officers went to the apartment without a warrant. When they could not gain entry at the door, they used the fire escape to look through the window. The officers' presence on the fire escape caused Sheppard to run and the officers to fear that he might be obtaining a gun or destroying evidence. Because the exigent circumstances were of the officers' own making, those circumstances did not justify the warrantless entry into the residence.

Further, as in *Jenkins,* the officers could have retreated from the fire escape, secured the area, and obtained a warrant. See *Olson, supra,* at 100–101, 110 S.Ct. at 1690, 109 L.Ed.2d at 95–96; *Mincey, supra,* at 394, 98 S.Ct. at 2414, 57 L.Ed.2d at 301; *McDonald v. United States* (1948), 335 U.S. 451, 455–456, 69 S.Ct. 191, 193, 93 L.Ed. 153, 158–159; *Jenkins, supra,* at 269–271, 661 N.E.2d at 809–810; *Bowe, supra,* at 114, 557 N.E.2d at 141–142. As the United States Supreme Court has stated, "[W]e cannot * * * excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional

mandate that the exigencies of the situation made that course imperative." *McDonald, supra,* at 456, 69 S.Ct. at 193, 93 L.Ed. at 158.

Consequently, the police officers' entry into the apartment violated Sheppard's Fourth Amendment rights, and the trial court should have suppressed any evidence obtained after that illegal entry as "fruit of the poisonous tree." See *Nardone v. United States* (1939), 308 U.S. 338, 340–341, 60 S.Ct. 266, 267–268, 84 L.Ed. 307, 311–312; *State v. Carter* (1994), 69 Ohio St.3d 57, 67, 630 N.E.2d 355, 363. The illegal entry "followed every step of their journey inside the house and tainted its fruits with illegality." *McDonald, supra,* at 459, 69 S.Ct. at 195, 93 L.Ed. at 160 (Jackson, J., concurring).

■■ Relying on *New York v. Harris* (1990), 495 U.S. 14, 110 S.Ct. 1640, 109 L.Ed.2d 13, the state contends that even if the entry into the apartment was illegal, Sheppard's statements to the police investigator and his apology to Bley were not tainted by the illegal entry. We disagree. The statements and the apology directly flowed from the illegal entry. The officers did not have an independent source for the evidence. Further, Sheppard made the statements at the scene of the illegal entry and soon afterward. Consequently, no time or distance dissipated the taint. See *Carter, supra,* at 67, 630 N.E.2d at 363; *State v. Couch* (June 25, 1999), Montgomery App. No. 17520, unreported, 1999 WL 961264. Thus, we hold that the trial court erred in overruling Sheppard's motion to suppress both his statements to the police and any evidence obtained after the illegal entry.

■■ But the trial court did not err in overruling Sheppard's motion to suppress Bley's identification of Sheppard as the individual who had assaulted him. The police officers had a right to be on the fire escape when they looked into the apartment and saw Sheppard in plain view. Further, Bley's identification was the result of his observations from the events of the previous day. Since the identification stemmed from evidence from an independent source and not from the illegal entry, its admission into evidence did not violate Sheppard's Fourth Amendment rights. See *Nardone, supra,* at 341, 60 S.Ct. at 268, 84 L.Ed. at 311–312; *Carter, supra,* at 67, 630 N.E.2d at 363.

■■ The state further contends that any error by the trial court in overruling Sheppard's motions to suppress was harmless beyond a reasonable doubt, particularly in regard to the conviction for possession of cocaine. But because Sheppard claimed at trial that he was not the man involved in the drug transaction and the ensuing scuffle with Officer Bley, a reasonable possibility exists that the admission of the tainted evidence contributed to the convictions for both possession of cocaine and assault on a police officer. Therefore, the error was not harmless. See *State v. Bayless* (1976), 48 Ohio St.2d 73, 2 O.O.3d 249,

357 N.E.2d 1035, paragraph seven of the syllabus, vacated as to death penalty (1978), 438 U.S. 911, 98 S.Ct. 3135, 57 L.Ed.2d 1155. Accordingly, we sustain Sheppard's assignment of error as it pertains to his motions to suppress evidence obtained as a result of the illegal entry and his in-custody statements. We must, therefore, reverse his convictions and remand this case for a new trial.

In his second assignment of error, Sheppard states that the evidence was insufficient to support the convictions and that the convictions were against the manifest weight of the evidence. Our review of the record establishes that the state's evidence, when viewed in a light most favorable to the prosecution, could have convinced a rational trier of fact that Sheppard had committed the offenses of possession of cocaine and assault on a police officer. Consequently, the evidence was sufficient to support the convictions. See *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

Our holding in the previous assignment of error does not render the issue of sufficiency moot, since the state's failure to present legally sufficient evidence would bar a retrial. See *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541, 546–547; *State v. Ashbrook* (Apr. 30, 1997), Hamilton App. No. C–960535, unreported, 1997 WL 208148. But since we have, for other reasons, remanded the case for a retrial, the issue of whether the convictions were against the manifest weight of the evidence is moot, and we decline to address it. See App.R. 12(A)(1)(c); *Thompkins, supra,* at 387, 678 N.E.2d at 547; *Ashbrook, supra.*

The judgment of the court of common pleas is accordingly reversed, and this cause is remanded for further proceedings in accordance with the terms of this opinion.

*Judgment reversed*
*and cause remanded.*

HILDEBRANDT and SHANNON, JJ., concur.

RAYMOND E. SHANNON, J., retired, of the First Appellate District, sitting by assignment.