DECISION
{¶ 1} Following a jury trial, defendant-appellant Anthony Williams was convicted of possession of cocaine and trafficking in cocaine, and he was also found to be a major drug offender. Williams received a sentence of 10 years for each offense, to be served concurrently. He further received a consecutive five-year sentence for the major-drug-offender specification, for a total of 15 years' imprisonment.
 {¶ 2} Williams was arrested during the execution of a high-risk search warrant by the Cincinnati Police Department. The warrant was obtained after the police received a tip from a confidential informant that crack cocaine was being cooked in a particular apartment on McMicken Avenue. This apartment was leased to Sandra Wilson. Wilson was a friend of Williams's aunt, and both Williams and his aunt were present with Wilson in the apartment when the search was carried out.
 {¶ 3} The officers involved in the search observed Wilson's apartment for approximately an hour before executing the warrant. They did not see Williams enter or leave the apartment building during this time period. Because this was a high-risk warrant, it was executed by a SWAT team that used a no-knock entrance. The officers broke down the apartment door with a tactical entry device, and before entering, they threw a "flash-bang" diversionary device into the apartment. This device was a small explosive charge that created smoke; it was used to disorient those inside the location to be searched.
 {¶ 4} Officer Nogueria was the first member of the SWAT team to enter the apartment, and upon his entrance he saw Williams run from the vicinity of the kitchen to a window 10-15 feet away. Williams climbed out the window and down a fire escape. Officer Nogueria radioed an officer on the street, who gave chase and apprehended Williams. After being given his Miranda rights, Williams told the apprehending officer, Officer Hammer, that he had arrived at Wilson's apartment about five minutes prior to the execution of the warrant.
 {¶ 5} Officers Kowalski and Jones testified about the drugs and other items found in the apartment. The kitchen contained numerous sandwich bags filled with crack cocaine, several cellular phones, four digital scales, a measuring cup, and a cooking pot. A large quantity of money was found in one of the cupboards. A blue-jean jacket was found in the living room, and it contained a set of keys, one of which fit the apartment door. The apartment also contained several guns and ammunition. Officer Kowalski further testified that he was familiar with the aroma of crack cocaine, and that the apartment smelled as if crack cocaine had recently been cooked. Approximately 235 grams of crack cocaine were found.
 {¶ 6} At trial, the state attempted to link several of the items found in the apartment to Williams. One of the cellular phones found in the kitchen fit into a phone clip Williams was wearing when apprehended. This phone was registered to Williams's brother Donte Williams, who was in jail at the time of the search. Regarding the jean jacket, Officer Kowalski testified that he had seen Williams wearing a similar jacket on the streets prior to his arrest. Finally, the state introduced a fingerprint that was found on a piece of plastic surrounding one of the digital scales in the kitchen. This print matched a fingerprint card from the Hamilton County Justice Center belonging to someone named Anthony Williams. The fingerprint card was created in 1996.
 {¶ 7} Williams presented only one witness, Sandra Wilson. Wilson testified that the drugs in her apartment belonged to someone named "Richard," and that she had allowed "Richard" and a man named Donald Stevenson to cook drugs inside her apartment in return for supplying her with drugs. She further stated that Williams and his aunt came over to her apartment to eat potato chips and drink soda. But testimony also revealed that on a prior date she had told the prosecutor that Williams had come over to her apartment to use the restroom. According to Wilson, Williams arrived at her apartment only five minutes before the officers conducted their search.
 {¶ 8} After Wilson's testimony, the state recalled Officer Kowalski on rebuttal to impeach Wilson's credibility. Kowalski testified that when he questioned Wilson the day of the search, she had stated that she had allowed Anthony Williams to cook drugs in her apartment. She had further told Kowalski that Williams had shot a gun at her in the past to threaten her into allowing their arrangement to continue.
 {¶ 9} After the testimony and the evidence were presented to the jury, Williams was convicted. He now submits seven assignments of error on appeal, which we address out of turn.
 {¶ 10} We begin with Williams's fourth assignment of error, which alleges that the trial court erred in admitting into evidence the fingerprint card that purported to contain his fingerprints. Williams is correct: the state presented no testimony or evidence indicating that the prints on the card belonged to him.
 {¶ 11} During trial, the state presented the testimony of Criminalist Herman, a fingerprint expert. Herman testified that he had located a print on a clear plastic box containing one of the digital scales; he then obtained a fingerprint card for comparison from the Hamilton County Justice Center by submitting the name Anthony Williams. Herman also stated that he used a jacket number to obtain the card. But he provided no explanation regarding the significance or effect of the jacket number, other than to state that such a number was necessary to get the fingerprint out of the file. Herman concluded that the print on the plastic box matched the left thumb print from the card. The fingerprint card that Herman used for comparison was created in 1996.
 {¶ 12} Herman's testimony was not sufficient to prove that the fingerprint card he used for identification belonged to the Anthony Williams on trial in this case. No social-security number or birth date was used for identification, nor did the officer who actually took the prints testify. Our holding is guided by this court's decision in State v. Long,[1] which also involved a fingerprint card utilized at trial. In Long, the state did not present testimony from the officer who took the prints in question, nor did it connect the prints on the card to the defendant at trial. The state's witness merely testified that a fingerprint card belonging to a Ronald Burns had been obtained, and that a print from the card matched a print on a piece of evidence in the case. The state used the same method to authenticate the fingerprint card in Long as it did in the case sub judice. Because such a method was not sufficient in Long,
it is not sufficient in the present case.
 {¶ 13} The Eighth Appellate District has concurred with our reasoning in a similar case.[2] After discerning no connection between a fingerprint on record and the defendant, the court held that "it is axiomatic that any evidentiary material must be properly authenticated, that is, identified as what it purports to be."[3] We conclude that the fingerprint in the present case was not properly authenticated. The state could have presented testimony from the officer who created the fingerprint card to verify that the Anthony Williams on trial was the same person who had been fingerprinted to create the card. Or the state could have taken current prints of Williams and called the officer who took the current prints to testify.
 {¶ 14} Because the fingerprint card was not properly authenticated, the jury was not entitled to give it any weight, and it should not have been admitted into evidence. We are unable to discern how much weight the jury actually gave to this piece of evidence. Because we cannot say beyond a reasonable doubt that the jury would still have found Williams guilty absent the fingerprint card, we must conclude that there was prejudicial error in this respect.
 {¶ 15} In the same assignment of error, Williams also alleges that it was error to allow hearsay testimony that he was the target of the police department's investigation and search. We disagree. Testimony that Williams was the target of the investigation was not hearsay. The testifying officer had firsthand knowledge of this information. We further conclude that such testimony was not prejudicial, and the trial court did not err in allowing it.
 {¶ 16} We now turn to Williams's remaining assignments of error. In his second assignment of error, he posits that his conviction was not supported by the manifest weight of the evidence. And in his sixth assignment of error, Williams argues that the trial court erred in imposing more than a minimum sentence because it made certain findings that should have been made by the jury. Because these issues are rendered moot by our resolution of the fourth assignment of error, we need not address them.
 {¶ 17} Williams's first assignment of error alleges that the verdict against him was supported by insufficient evidence. The issue of sufficiency is not rendered moot in this case, because the state's presentation of insufficient evidence would bar a retrial.[4] When reviewing the sufficiency of the evidence, we must determine "whether after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt."[5] A jury is entitled to rely on direct as well as circumstantial evidence.
 {¶ 18} Williams was convicted of drug possession under R.C.2925.11(A). This section provides, "No person shall knowingly obtain, possess, or use a controlled substance." The state presented evidence showing the following: Williams was in an apartment that contained approximately 235 grams of crack cocaine; Williams fled when the police arrived; a cellular phone found in the apartment fit into a phone clip that Williams was wearing; and prior to being arrested, Williams had been seen wearing a jacket similar to one found in the apartment, which contained a key to the apartment. This evidence was not insufficient as a matter of law. A rational trier of fact could have found the elements of drug possession beyond a reasonable doubt.
 {¶ 19} Williams was also convicted of trafficking in cocaine under R.C. 2925.03(A)(2). This section states that no person shall "prepare for shipment * * * prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale * * *." Along with the evidence we have already discussed, the state also presented evidence showing that the apartment contained digital scales, plastic bags, and rubber bands. Testimony also indicated that the apartment smelled as if cocaine had recently been cooked. All of this permitted the reasonable inference that cocaine was being prepared for shipment or distribution; we conclude that the remaining evidence was not insufficient as a matter of law. We therefore overrule Williams's first assignment of error.
 {¶ 20} Williams's third assignment of error alleges that the trial court erred in denying his Crim.R. 29 motion for an acquittal. The standard of review for such a motion is identical to the standard of review for the sufficiency of the evidence.[6] Based on our preceding analysis, we must conclude that Williams's argument is without merit.
 {¶ 21} Williams's seventh assignment of error argues that the trial court erred in dismissing a juror for cause without allowing Williams to question the juror. During voir dire, a potential juror stated that he believed in the libertarian position that drugs should be legalized. The juror did state that, despite his belief, he was willing to apply the law. After brief questioning, the state requested that the juror be removed for cause. The court granted this request without allowing Williams the opportunity to question the juror. We review the trial court's action under an abuse-of-discretion standard.[7]
 {¶ 22} After reviewing the record and the transcripts of the voir dire, we conclude that any potential error in not allowing Williams to question the juror was harmless. The state still had one peremptory challenge remaining; had the juror not been excused for cause, the state could have exercised its peremptory challenge.
 {¶ 23} In his fifth assignment of error, Williams argues that he should be granted a new trial because of prosecutorial misconduct during closing argument. Prosecutorial misconduct cannot be grounds for a new trial unless the defendant was deprived of a fair trial.[8] The prosecutor's remarks must have been improper and must have prejudicially affected substantial rights of the accused.[9] This court must not evaluate the challenged statements in isolation, but rather in light of the entire closing argument.[10] Furthermore, "the prosecution is normally entitled to a certain degree of latitude in its closing remarks."[11]
 {¶ 24} Williams points to four specific instances of alleged prosecutorial misconduct. He first alleges that the prosecutor improperly used Wilson's statements not only to impeach her, but also as substantive proof of the statements' truth. Williams argues that because Wilson's statements were not taken under oath, the rules of evidence only permitted them to be used for impeachment. But Williams did not object to this part of the prosecutor's argument during closing. "The failure to object to statements made by a prosecutor during closing argument waives all but plain error."[12] To prevail under a plain-error analysis, Williams must demonstrate that the outcome of the trial would have been different but for the prosecutor's statements.[13] Williams has not met this strict standard; we conclude the outcome of the trial would not have been different absent these particular comments.
 {¶ 25} Williams next argues that the prosecutor improperly stated that "Donte Williams is the alias name of the defendant." The crux of Williams's argument is that the prosecutor knew that Donte Williams and Anthony Williams were two different people, and that the prosecutor's remark that Williams used his brother's name as an alias was grossly prejudicial. We disagree. The fact that Donte and Anthony were different people did not prevent Anthony from using Donte's name as an alias.
 {¶ 26} Some testimony on this topic was given at trial. Officer Kowalski stated that the name Donte Williams "was listed as an alias on the arrest slip for Ms. Williams. Mr. Williams had fake I.D." Upon objection, the trial court struck the reference to the fake identification, but not to the alias. The record indicates that Officer Kowalski referred to the alias of a Ms.
Williams. But the prosecutor referred to the alias being used by Williams, who is a male. While the prosecutor's characterization of the officer's statement was not entirely accurate, in light of the remaining evidence presented, we cannot say that it deprived Williams of a fair trial.
 {¶ 27} Williams further takes issue with the prosecutor's comment that the blue-jean jacket linked Williams to the apartment. The prosecutor stated, "The testimony was that Officer Kowalksi had seen the defendant in the same jacket or what appeared to be the same jacket prior to that day, thus again linking the defendant to being inside of this apartment." This statement was not improper. Testimony at trial revealed that Williams had been seen prior to his arrest wearing a jacket similar to the one found in the apartment. The prosecutor was merely commenting on the evidence adduced at trial.
 {¶ 28} Williams last argues that the prosecutor improperly stated that two of the testifying officers had never heard of two other potential suspects until the week prior to the trial. Williams is correct. Trial testimony indicated that the officers were aware of these other two potential suspects. But this comment did not prejudicially affect any of Williams's rights. Given the array of evidence presented that provided potential links between Williams and the crack cocaine, we cannot say that this comment deprived Williams of a fair trial.
 {¶ 29} In conclusion, we find merit in that part of the fourth assignment of error concerning the fingerprint evidence. We therefore reverse the trial court's judgment and remand this case for further proceedings consistent with the law and this decision.
Judgment reversed and cause remanded.
Hildebrandt, P.J., and Gorman, J., concur.
[1] State v. Long (Dec. 29, 1995), 1st Dist. No. C-950031.
[2] State v. Allen (Apr. 7, 1983), 8th Dist. Nos. 43687 and 43688.
[3] Id., citing Evid.R. 901(A).
[4] State v. Sheppard (2001), 144 Ohio App.3d 135, 144,759 N.E.2d 823.
[5] State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.
[6] State v. Williams (1996), 74 Ohio St.3d 569, 576,600 N.E.2d 724.
[7] State v. Howard, 2nd Dist. No. 20575, 2005-Ohio-3702, at ¶ 59.
[8] State v. Smith (1998), 130 Ohio App.3d 360, 366,720 N.E.2d 149.
[9] Id.
[10] State v. Kelly, 1st Dist. No. C-010639, 2002-Ohio-6246, at ¶ 22, citing State v. Keenan (1993), 66 Ohio St.3d 402, 410,613 N.E.2d 568.
[11] State v. Smith (1984), 14 Ohio St.3d 13,570 N.E.2d 883.
[12] State v. Kelly, 1st Dist. No. C-010639, 2002-Ohio-6246, at ¶ 22.
[13] Id.