DECISION AND JUDGMENT ENTRY
{¶ 1} The Ottawa County Court of Common Pleas granted a motion to suppress physical evidence of three marijuana plants recovered from appellee's premises during a warrantless search. The state has filed a timely appeal for review. Upon review, the judgment of the trial court is affirmed.
 {¶ 2} The parties dispute many facts surrounding the search. The following facts were elicited by the testimony of three officers produced at the hearing on the motion to suppress:
 {¶ 3} On July 27, 2004, officers of the Ottawa County drug task force received a tip from another police officer that appellee was cultivating marijuana on his premises. Six days later, on August 2, 2004, drug task force officers went to appellee's residence. At least two officers were in vehicles which approached appellee's home from the front. A "spotter" from the Ohio Bureau of Criminal Investigation and Identification was in a helicopter, which did a "fly-over" of appellee's back yard. No actions had been taken during the intervening six days to obtain a search warrant or to obtain more information regarding the tip or appellee.
 {¶ 4} Appellee's backyard was enclosed by a six-foot tall privacy fence. An officer testified that one could not see through it, but that one could easily attempt to see over it. The "spotter" in the helicopter saw marijuana plants growing in the yard, with his naked eye and from 500 feet in the air, and saw a single male standing in the backyard near the plants. The spotter radioed the officers on the ground and relayed the information. The two officers then exited their vehicles and approached the fence. One agent went around to the side of the backyard furthest from the house, stood upon a telephone pole lying horizontal on the ground, and looked over the top of the privacy fence. He saw several marijuana plants growing, and a male he later identified as appellee. The officer asked appellee permission to enter the backyard through a garage in the back of the yard. Appellee refused. The officer then told appellee to meet him at the gate in the front of the yard.
 {¶ 5} When that officer reached the gate, he stated that appellee was still inside the fence. He stated that, although appellee came out of the fenced area to speak with him, he could not remember how appellee exited the gate, could not remember whether he assisted in opening the gate, and could not remember whether the gate was left standing open.
 {¶ 6} The officer told appellee that he had seen marijuana plants growing in the backyard, and he testified that appellee immediately admitted that the plants belonged to him. The officer asked appellee to "take me to the plants." He admitted that he did not ask permission to enter the backyard. He could not recall whether appellee said anything in response; he could only remember that he followed appellee through the backyard and to the plants. However, he could not remember whether the gate was opened or shut, or whether he or appellee opened the gate to enter first. He stated that appellee never told him to leave the property. Both he and the other officer described the scene as "very low key" and stated that they were not concerned about possible danger.
 {¶ 7} Both officers testified that appellee told them details about how he obtained the plants. Appellee then asked whether they were going to seize the plants and whether he would be charged. One officer explained that the charge would depend upon the weight of the plants. The plants were removed.
 {¶ 8} After this, the officers asked appellant permission to search inside his house. At no point has appellee disputed that he gave valid consent for the officers to search inside his residence. No incriminating evidence was found inside his home.
 {¶ 9} Appellee was indicted for cultivation of marijuana in excess of one thousand grams but less than five thousand grams, a violation of R.C. 2925.04(A) and (C)(4)(d) and a felony of the third degree, and possession of drugs, a violation of R.C.2925.11(A) and (C)(3)(d) and a felony of the third degree. Soon thereafter, appellee filed a motion to dismiss all evidence, including any inculpatory statements. The trial court granted the motion to suppress the marijuana plants on the grounds that no exigent circumstances existed and the state failed to establish that appellee had consented to the search. It found that appellee's statements were admissible, however, because appellee was neither in custody nor being interrogated at the time the statements were made. The state filed this timely appeal. Appellee did not file a cross-appeal or a cross-assignment of error.
 {¶ 10} The state presents two assignments of error:
 {¶ 11} "Appellee's Fourth Amendment rights were not violated when the BCI I performed an aerial surveillance of appellee's property and detected marijuana plants growing in the back yard.
 {¶ 12} "Based on the totality of the circumstances appellee gave consent to the officers when the gate was opened without force."
 {¶ 13} Appellate review of a trial court decision on a motion to suppress evidence presents a mixed question of law and fact.State v. McNamara (1997), 124 Ohio App.3d 706, 710. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." State v. Burnside (2003), 100 Ohio St.3d 152,154-155, citing State v. Mills (1992), 62 Ohio St.3d 357, 366. The appellate court must then accept the trial court's findings of fact provided that they are supported by competent, credible evidence. State v. Durnwald (2005), 163 Ohio App.3d 361, 369, citing Burnside, supra. Next, the appellate court, conducting a de novo review, determines independently whether the facts in the case satisfy the applicable legal standard. State v. Claytor
(1993), 85 Ohio App.3d 623, 627.
 I. Probable Cause and Exigent Circumstances {¶ 14} The state posits the issue arising from its first assignment of error as whether appellee's Fourth Amendment rights were violated when the marijuana plants were viewed in appellee's backyard during the aerial surveillance. The state argues that it has established the "plain view" exception to the Fourth Amendment's warrant requirement because the plants were visible from the air. Second, the state argues that the plants were in danger of imminent destruction, creating exigent circumstances justifying the warrantless entry. The trial court in its judgment entry, referring to the existence of exigent circumstances, stated, "There are none. The state had plenty of time to take their information to a Magistrate and obtain a search warrant." We agree.
 {¶ 15} The Fourth Amendment protects individuals from state searches and seizures in places where they have a reasonable expectation of privacy. It "protects two types of expectations, one involving `searches,' the other `seizures.' A `search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. A `seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." U.S. v. Jacobsen
(1984), 466 U.S. 109, 113. The Fourth Amendment does not permit post hoc justifications of the state's conduct in searching an individual or his property based upon the items seized from the search. "The reasonableness of an official invasion of the citizen's privacy must be appraised on the basis of the facts as they existed at the time that invasion occurred." Id. at 115.
 {¶ 16} The home is the most inviolable of places, Kyllo v.United States (2001), 533 U.S. 27, 38, and with only very few exceptions are government agents justified in entering it without a warrant. "[A] search conducted without a warrant issued upon probable cause is per se unreasonable [and is] subject only to a few specifically established and well-delineated exceptions."State v. Posey (1988), 40 Ohio St.3d 420, 427, citingSchneckloth v. Bustamonte (1973), 412 U.S. 218, 219, (quotingKatz v. United States (1967), 389 U.S. 347, 357). Neither party notes that the contested search occurred in appellee's backyard, as opposed to his house; however, it is by now well-established that Fourth Amendment protections extend to the "curtilage" of a home. U.S. v. Dunn (1987), 480 U.S. 294, 301. Nor does either party raise issue with the trial court's implicit acceptance that appellee's backyard qualifies as curtilage, and should have the same protections as the home itself. Therefore, we presume that appellee's backyard, surrounded as it was with a six foot tall privacy fence, qualifies as curtilage under the Dunn
factors[1] and is therefore as protected as the home itself.
 {¶ 17} The prosecution must establish that an exception to the warrant requirement exists. State v. Peagler (1996),76 Ohio St.3d 496, 500, citing Xenia v. Wallace (1988),37 Ohio St.3d 216, paragraph two of the syllabus. Here, the state argues that when the marijuana plants were seen in plain view from the air, (1) the probable cause was alone sufficient to justify a warrantless search, and (2) exigent circumstances (alleged imminent destruction of the plants) forced the officers to enter the property and seize the plants without a warrant.
 {¶ 18} In California v. Ciraolo (1986), 476 U.S. 207, the United States Supreme Court addressed aerial surveillance of a person's premises and held that, since a person has no reasonable expectation of privacy in possessions in plain view of the public, a person also has no reasonable expectation of privacy in possessions observable from the airspace above his home. However, contrary to the state's assertions, observation of incriminating evidence only creates the basis for a warrant, not the basis for a warrantless search. An observation of incriminating evidence "is precisely what a judicial officer needs to provide a basis for a warrant." Id. at 213.
 {¶ 19} Officer St. Clair's observation of the plants while standing on a telephone pole and looking over a six-foot privacy fence is subject to the same analysis. In fact, the Court inCiraolo mentioned in dicta that, if a telephone repair person can view items in plain view from a telephone pole, then a person has no reasonable expectation of privacy from government agents viewing those items from the same position. "[O]ne who grows illicit drugs in his backyard" is not "`entitled to assume' his unlawful conduct will not be observed by a passing aircraft- or by a power company repair mechanic on a pole overlooking the yard." Id. at 215. Again, however, this type of observation only creates probable cause that may form the basis for a search warrant.
 {¶ 20} The state cites State v. Waddy (1992),63 Ohio St.3d 424, 442,[2] for the proposition that items in plain view may be seized without a warrant even if the items were not inadvertently discovered. Appellee counters that Waddy is not analogous because it involved officers viewing the evidence from the home, who were already lawfully in the home by virtue of a warrant when they saw the evidence. Appellee is correct.
 {¶ 21} Under the plain view doctrine, "an officer may seize an item without a warrant if the initial intrusion leading to the item's discovery was lawful and it was `immediately apparent' that the item was incriminating." Id., citing Coolidge v. NewHampshire (1971), 403 U.S. 443, 466. The state argues that the seizure of the plants was lawful because they were viewed from a place they were legally allowed to be. The plain view exception to the warrant requirement, however, only creates probable cause to support a warrant — it does not and cannot create justification to enter a home or property without a warrant.
 {¶ 22} The state next argues that their observations created "exigent circumstances" because appellee may have destroyed the marijuana plants before officers could obtain a warrant. The trial court's conclusion that no exigent circumstances existed is supported by clear and convincing evidence.
 {¶ 23} "The four exceptions to the warrant requirement justifying a warrantless search of a home are (1) an emergency situation, (2) search incident to an arrest, (3) `hot pursuit,' and (4) easily destroyed or removed evidence." State v. Davis
(1999), 133 Ohio App.3d 114, 118, citing State v. Cheers
(1992), 79 Ohio App.3d 322, 325. Warrantless entrance into a home in order to prevent the imminent destruction of evidence may be justified when combined with probable cause, Minnesota v. Olson
(1990), 495 U.S. 91, 100, as does hot pursuit of a suspect who flees into a home, Middletown v. Flinchum (2002),95 Ohio St.3d 43, at syllabus, and a reasonable belief that a person inside is in need of immediate aid. State v. Nields (2001),93 Ohio St.3d 6, 16, citing Mincey v. Arizona (1978), 437 U.S. 385, 395. A reasonable suspicion of imminent destruction of evidence also allows officers to dispense with the "knock and announce" rule before entering a home with a warrant. U.S. v. Banks (2003),540 U.S. 31, 36.
 {¶ 24} Where probable cause exists, but exigent circumstances are absent, warrantless entries clearly violate the Fourth Amendment. "Before government agents may invade the sanctity of the home, the government must demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries. * * * Moreover, * * * no exigency is created simply because there is probable cause to believe that a serious crime has been committed * * *." Welsh v.Wisconsin (1984), 466 U.S. 740-741, at syllabus. In Welsh, the officers entered the defendant's home with probable cause to believe he had driven under the influence of alcohol. They invoked the exigent circumstances exception by arguing that the evidence of alcohol in the defendant's blood would dissipate if they had to wait for a warrant to issue.
 {¶ 25} One court of appeals has held that, where the claimed exigent circumstances are of the officer's own making, warrantless entries into and searches of a home cannot be justified and the fruits of the entry and search warrant suppression. State v. Jenkins (1995), 104 Ohio App.3d 265, appeal denied by (1995), 74 Ohio St.3d 1462. Following this, the court in State v. Sheppard (2001), 144 Ohio App.3d 135, 142, held that even though police standing on a fire escape (legally) looking into an apartment window saw the defendant run out of a room and they suspected that he was about to destroy some drugs, no exigent circumstances existed that would justify a warrantless entry into the residence. Id. at 143-144.[3] This court has cited Jenkins with approval. State v. Davis,133 Ohio App.3d at 119-120. In State v. Kessler (1996), 111 Ohio App.3d 98, the court held that no exigent circumstances existed to justify a warrantless entry because there was no indication to the officers that the evidence "was in the process" of being destroyed. Id. at 102.
 {¶ 26} Here, quite unlike Jenkins and Sheppard, there was no evidence that the officers saw appellee make any moves indicating that he intended to destroy the plants, other than, as the state asserts, the fact that he was in his backyard. As inKessler, there was no immediate danger to anyone, there was no indication that appellee would flee, and no indication that he would destroy evidence before a warrant could be obtained. Both officers admitted that they did not attempt to obtain a search warrant during the six days between the tip and the search; one officer stated that he had believed that seeing the plants would suffice, and the other officer admitted that he had no indication that the evidence would have been destroyed during those six days. The trial court plainly did not err in holding that the state had plenty of time to obtain a warrant. Appellant's first assignment of error is not well-taken.
 II. Consent to the Search {¶ 27} On alternative grounds, the state contends that suppression of the marijuana plants is improper because appellee voluntarily gave the officers consent to enter the property when they appeared at his backyard gate. The parties disagree as to whether the agents had their guns drawn or holstered, and as to whether the fence gate was open. The state admits that the agents could not "specifically recall where the gate latches were or how the gate was opened or whether they physically touched the gate."
 {¶ 28} The state bears the burden of establishing that appellee validly consented to their entrance upon his property. The trial court's judgment entry stated:
 {¶ 29} "Consent would be determined from the manner in which the gate was opened and what the officer said to the Defendant to persuade him to open the gate. No one who testified for the State remembered the circumstances surrounding the opening of the gate, nor the conversations [the officer] had with the Defendant prior to entry. These matters are critical. [The second officer] testified that the Defendant opened the gate, but no one can tell what language was used to persuade the Defendant to open the gate. The whole matter hinges on the issue of consent, which was not established." (Citations omitted.)
 {¶ 30} "[O]ne of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." Schneckloth v.Bustamonte (1973), 412 U.S. 218, 219. "In order to waive one's Fourth Amendment privilege against unreasonable searches and seizures, one must voluntarily consent to the search. Whether consent was voluntarily given is determined by the totality of the circumstances. State v. Childress (1983), 4 Ohio St.3d 217, paragraph one of the syllabus (Schneckloth v. Bustamonte
(1973), 412 U.S. 218, followed)." State v. Hoffner (2004),102 Ohio St.3d 358, 364. The touchstone in any determination as to voluntariness must be whether the state can show the absence of coercion, "by explicit or implicit means, by implied threat or covert force. For, no matter how subtly the coercion was applied, the resulting `consent' would be no more than a pretext for the unjustified police intrusion against which the Fourth Amendment is directed." Schneckloth, 412 U.S. at 228.
 {¶ 31} After carefully reviewing the officers' testimony, we agree that the state has not carried its burden of establishing consent and the unreasonable search warrants suppression of the plants. The trial court heard the testimony and made a factual determination that the officers could not say with any certainty what the circumstances of appellee's alleged consent were. This factual determination is supported by the clear and convincing evidence of the officers' testimony. Moreover, in weighing the evidence, determinations of a witness' credibility is a function of the trier of fact that is given substantial deference on review. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. This rule also applies to suppression hearings. State v. Fanning (1982), 1 Ohio St.3d 19, 20.
 {¶ 32} The state's second assignment of error is therefore not well-taken.
 III. Conclusion {¶ 33} For the foregoing reasons, the judgment of the Ottawa County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Ottawa County.
Judgment Affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Pietrykowski, J., Singer, P.J., Skow, J., concur.
[1] The Dunn factors to determine whether an area qualifies as curtilage include: "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." Dunn,480 U.S. at 301.
[2] State v. Waddy was superceded by constitutional amendment as stated by State v. Smith (1997), 80 Ohio St.3d 89.
[3] Interestingly, that court also suppressed the defendant's statements made on the premises to the police; the statements were tainted because they directly flowed from the illegal entry, were made at the scene and soon afterward. Here, appellee has not filed a cross-appeal or a cross-assignment of error challenging the trial court's admission of his statements made to officers, on his premises, and after their entry.