JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant, the state of Ohio, appeals the decision of the Cuyahoga County Court of Common Pleas granting defendant-appellee, Arthur Crenshaw's motion to suppress. For the following reasons, we affirm.
 {¶ 2} Detective Jeff Follmer from the Cleveland Police Department testified at the suppression hearing. Det. Follmer testified that on July 6, 2007, he, along with several other vice detectives, were in the area of 3656 E. 52nd Street, investigating a complaint of drug activity at this address. Officer Rojas was conducting surveillance in an undercover vehicle. Officer Rojas observed a vehicle approach. The passenger got out, stayed a short time, and then left. The vehicle was stopped, and the passenger was found to be in possession of cocaine.
 {¶ 3} Det. Follmer testified that the vice unit met and went back to the house to investigate. Seven to twelve police officers entered the backyard, which was fenced in. One side had a six-foot wooden fence, and the other side had a chain-link fence. Det. Follmer testified that he approached the backyard by way of the driveway. He entered the backyard "from the fence" and smelled a strong odor of marijuana. He also noticed a group of seven to ten people together by the chain-link fence, where the other officers were approaching. The police surrounded the backyard, and Det. Follmer approached the group. All present were ordered to put their hands up. *Page 2 
 {¶ 4} Det. Follmer spoke with Crenshaw, who lived at the house, and asked for consent to search his house. In the meantime, Crenshaw's co-defendant put his hand into his pocket and then tried to enter the house. Det. Follmer explained to the co-defendant that he could not enter the house until he was patted down. During the pat-down, Det. Follmer discovered cocaine in the co-defendant's pocket, along with $985. He was placed under arrest.
 {¶ 5} Det. Follmer explained to Crenshaw that he, Det. Follmer, could go get a warrant to search the house or that Crenshaw could give him consent. Crenshaw gave Det. Follmer consent to search his home. Det. Follmer testified that Crenshaw took him inside and pointed out the straw that had cocaine residue on it.
 {¶ 6} Crenshaw testified that he had some people, including women and children, over for a barbecue. He testified that the police entered the backyard by climbing over the fence, that they surrounded his backyard, and that they had their guns drawn. Crenshaw testified that he felt he had no choice but to consent to the search.
 {¶ 7} The trial court granted Crenshaw's motion to suppress without opinion. The state appealed, advancing one assignment of error for our review, which states the following:
 {¶ 8} "The trial court erred in granting the appellee's motion to supress."
 {¶ 9} The state argues that the encounter between Crenshaw and the police was consensual. The state also argues that the police had probable cause to enter *Page 3 
Crenshaw's backyard without a warrant because they smelled a strong odor of marijuana.
 {¶ 10} Appellate review of a suppression ruling involves mixed questions of law and fact. See State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372. When ruling on a motion to suppress, the trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight of the evidence. See State v.Fanning (1982), 1 Ohio St.3d 19, 20. An appellate court must accept the trial court's findings of fact as true if they are supported by competent and credible evidence. Burnside, supra, at ¶ 8. But the appellate court must then determine, without any deference to the trial court, whether the facts satisfy the applicable legal standard. Id.
 {¶ 11} The Fourth Amendment to the United States Constitution, as well as Article I, Section 14, of the Ohio Constitution, guarantees the right of people to be secure in their persons, houses, and effects against unreasonable searches and seizures. This means that the state is prohibited from making unreasonable, warrantless intrusions into areas where people have legitimate expectations of privacy. United States v.Chadwick (1977), 433 U.S. 1, 7, 53 L.Ed.2d 538, 97 S.Ct. 2476.
 {¶ 12} It is now well established that Fourth Amendment protections extend to the "curtilage" of the home. U.S. v. Dunn (1987),480 U.S. 294, 301. The curtilage is an area immediately adjacent to a person's home that he or she may reasonably *Page 4 
expect will remain private. Oliver v. United States (1984),466 U.S. 170, 180. Therefore, the right of the police to come into the curtilage is highly restricted. State v. Woljevach, 160 Ohio App.3d 757,2005-Ohio-2085. Absent a warrant, police have no greater rights on another's property than any other visitor has. Id. The only areas of the curtilage where the officers may go are those impliedly open to the public. Id.
 {¶ 13} We look to the Dunn factors to determine whether an area qualifies as curtilage, which factors include "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." Dunn, supra.
 {¶ 14} Here, the backyard was fenced in. One side had a chain-link fence, and the driveway side had a six-foot wooden fence that could not be seen through. Crenshaw testified that he always kept the gate closed to keep the neighborhood dogs from wandering into his yard. The detective testified that the house was close to the street, so it was a short walk up the driveway to the fence. We find that the backyard where Crenshaw and his guests were located qualifies as curtilage, and thus is protected by the Fourth Amendment. See, also, State v. Mims, Ottawa App. No. OT-05-030, 2006-Ohio-862.
 {¶ 15} The Fourth Amendment prohibits only those searches and seizures that are unreasonable. Harris v. United States (1947), 331 U.S. 145. Searches *Page 5 
conducted without a warrant are per se unreasonable, subject to specifically established exceptions. State v. Smith (1978),56 Ohio St.2d 405, 407.
 {¶ 16} First, the state argues that the encounter with Crenshaw was consensual. A consensual encounter is one where the police approach a person in a public place, engage the person in conversation, request information, and the person is free to not answer and to walk away.United States v. Mendenhall (1980), 446 U.S. 544, 554. A request to examine one's identification does not make an encounter nonconsensual.Florida v. Rodriguez (1984), 469 U.S. 1, 4-6. Nor does the request to search a person's belongings. Florida v. Bostick (1991), 501 U.S. 429. The Fourth Amendment guarantees are not implicated in such an encounter unless the police officer has by either physical force or show of authority restrained the person's liberty so that a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter. Mendenhall, 446 U.S. at 554; Terry v. Ohio
(1968), 392 U.S. 1, 16, 19.
 {¶ 17} Here, again, Crenshaw was not approached in a public place. The police surrounded and entered his backyard with guns drawn. No one could leave without first being patted down. We find that the encounter with Crenshaw was not consensual because a reasonable person would not feel free to terminate the encounter. *Page 6 
 {¶ 18} Next, the state argues that the police had probable cause to enter the backyard without a warrant to investigate because the detective testified that he smelled a strong odor of marijuana coming from the backyard.
 {¶ 19} The Ohio Supreme Court has held that "the smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to conduct a search." State v. Moore (2000),90 Ohio St.3d 47, syllabus. However, probable cause alone is not enough to justify a warrantless search. Id. In Moore, the subsequent search of the automobile was justified pursuant to the "automobile exception" to the warrant requirement, and the search of the person was justified by the "exigent circumstances" exception. Id. at 53. The Supreme Court did not hold that the smell of marijuana operated as both probable cause and an exception to the warrant requirement.
 {¶ 20} In City of Alliance v. Barbee (Mar. 5, 2001), Stark App. No. 2000 CA00218, the court stated: "We decline to extend the `plain view' exception to the warrant requirement to include the use of one's sense of smell to detect marijuana to justify the extensive search of one's home. We note that our decision is supported by the United States Supreme Court's decisions in Johnson v. U.S. (1948), 333 U.S. 10,92 L.Ed. 436, 68 S.Ct. 367, and Taylor v. U.S. (1932), 286 U.S. 1,76 L.Ed. 951, 52 S.Ct. 466, which held that the presence of odors alone does not authorize a search without a warrant." *Page 7 
 {¶ 21} In this case, the detective testified that they went to investigate a drug complaint, that he and seven to twelve other officers planned to enter the house without a warrant, that he did not smell the odor of marijuana until he entered the backyard, and that getting a warrant was not the "preferred choice" that evening. We find that the odor of marijuana does not negate the warrant requirement.
 {¶ 22} Generally, under the exigent circumstances exception, there must be "compelling reasons" or "exceptional circumstances" to justify a warrantless search. Moore, 90 Ohio St.3d 47, 52, 734 N.E.2d 804, citingMcDonald v. United States (1948), 335 U.S. 451, 454, 93 L.Ed. 153,69 S.Ct. 191. A "warrantless search is also justified if there is imminent danger that evidence will be lost or destroyed if a search is not immediately conducted." Id., citing Cupp v. Murphy (1973), 412 U.S. 291,294-296, 36 L.Ed.2d 900, 93 S.Ct. 2000.
 {¶ 23} Here, there is no indication that any marijuana or other evidence was being destroyed. Therefore, there is no reason why seven to twelve officers could not have secured the area and obtained a search warrant. We find that the facts of this case do not justify the warrantless intrusion into Crenshaw's privacy pursuant to the exigent circumstances exception.
 {¶ 24} Finally, the state argues that Crenshaw consented to the search of his home. One of the established exceptions to the warrant requirement is a search that is conducted pursuant to voluntary consent.Schneckloth v. Bustamonte (1973), 412 U.S. 218, 219. The voluntariness of consent is a question of fact to be determined *Page 8 
from the totality of the circumstances, with the government having the burden of showing by "clear and positive" evidence that the consent was "freely and voluntarily" given. State v. Posey (1988),40 Ohio St.3d 420, 427.
 {¶ 25} An unlawful entry into a defendant's home may taint an otherwise voluntary consent to search obtained thereafter. State v.Cooper, Montgomery App. No. 20845, 2005-Ohio-5781. When a consent to search is obtained after an illegal entry, the consent is invalid unless the taint of the initial entry dissipated before the consent was given. Id., citing United States v. Buchanan (6th Cir. 1990), 904 F.2d 349,355-356. *Page 9 
 {¶ 26} Here, the initial entry by police was unlawful. Crenshaw's consent was given immediately after the illegal entry. We find that even if Crenshaw's consent was voluntarily given, it was still tainted by the unlawful entry by the police into Crenshaw's backyard. As a result, Crenshaw's motion to suppress was properly granted. Accordingly, the state's sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ANTHONY O. CALABRESE, JR., J., and KENNETH A. ROCCO, J., CONCUR *Page 1